# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | Jointly Administered at |
| | ) | Case No. 5:03-BK-1802 |
| WEIRTON STEEL CORPORATION, *et al.,* | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Honorable L. Edward Friend, II |
| | ) | United States Bankruptcy Judge |

**FIRST AMENDED PLAN OF LIQUIDATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**MCGUIREWOODS LLP**
Robert G. Sable, Esquire
Mark E. Freedlander, Esquire
James H. Joseph, Esquire
Dominion Tower, 23rd Floor
625 Liberty Avenue
Pittsburgh, PA 15222
Telephone:     (412) 667-6000
Facsimile:     (412) 667-6050

-and-

**BAILEY, RILEY, BUCH & HARMAN, LC**
Arch W. Riley, Jr., Esquire
Riley Building
53 – 14th Street, Suite 900
Wheeling, WV 26003-0081
Telephone:     (304) 232-6675
Facsimile:     (304) 232-9897
Co-counsel to Weirton Steel Corporation

**TABLE OF CONTENTS**

**Page**

ARTICLE I.        DEFINITIONS AND INTERPRETATION.................................................1

1.1     Administrative Expense Claim ....................................................................1

1.2     Allowed .....................................................................................................1

1.3     Authorized Agent........................................................................................1

1.4     Avoidance Actions .....................................................................................2

1.5     Bankruptcy Code ........................................................................................2

1.6     Bankruptcy Court........................................................................................2

1.7     Bankruptcy Rules........................................................................................2

1.8     Bonds .........................................................................................................2

1.9     Bonus Pool .................................................................................................2

1.10    Business Day...............................................................................................2

1.11    Buyer..........................................................................................................2

1.12    Cash ...........................................................................................................2

1.13    Causes of Action ........................................................................................2

1.14    Chapter 11 Case..........................................................................................2

1.15    Claim..........................................................................................................2

1.16    Claims Register ..........................................................................................2

1.17    Class ...........................................................................................................2

1.18    Closing Date ...............................................................................................2

1.19    COBRA ......................................................................................................3

1.20    Collateral ....................................................................................................3

1.21    Commencement Date ..................................................................................3

1.22    Creditors' Committee ..................................................................................3

1.23    Confirmation Date ......................................................................................3

1.24    Confirmation Hearing .................................................................................3

1.25    Confirmation Order .....................................................................................3

1.26    Debtor .........................................................................................................3

1.27    Debtor Subsidiaries .....................................................................................3

1.28    Disbursing Agent ........................................................................................3

1.29    Disclosure Statement ..................................................................................3

1.30    Disputed .....................................................................................................3

1.31    Distribution Record Date ............................................................................4

-i-

# TABLE OF CONTENTS
(continued)

Page

| 1.32 | Effective Date | 4 |
| 1.33 | Equity Interest | 4 |
| 1.34 | Estate | 4 |
| 1.35 | Final Order | 4 |
| 1.36 | General Unsecured Claim | 4 |
| 1.37 | Indenture Trustees | 4 |
| 1.38 | Informal Committee | 4 |
| 1.39 | Insurance Claim | 4 |
| 1.40 | Insurance Policy | 4 |
| 1.41 | Insurer | 4 |
| 1.42 | ISG Agreement | 4 |
| 1.43 | J.P. Morgan | 5 |
| 1.44 | Law | 5 |
| 1.45 | Lien | 5 |
| 1.46 | Liquidating Trust | 5 |
| 1.47 | Liquidating Trust Assets | 5 |
| 1.48 | Liquidating Trustee | 5 |
| 1.49 | Notes | 5 |
| 1.50 | Other Secured Claim | 5 |
| 1.51 | PBGC | 5 |
| 1.52 | Pension Plan | 5 |
| 1.53 | Person | 5 |
| 1.54 | Plan | 5 |
| 1.55 | Priority Non-Tax Claim | 5 |
| 1.56 | Priority Tax Claim | 6 |
| 1.57 | Pro Rata Share | 6 |
| 1.58 | Retirees | 6 |
| 1.59 | Retirees' Committee | 6 |
| 1.60 | Sale Transaction | 6 |
| 1.61 | Schedules | 6 |
| 1.62 | Secured Claim | 6 |
| 1.63 | Settlement and Lockup Agreement | 6 |

Case 03-bk-01802   Doc 2594-1   Filed 07/09/04   Entered 07/09/04 17:27:15   Desc
Exhibit A   Page 4 of 63

1.64    Secured Indentures ......................................................................................6

1.65    Tax Code ....................................................................................................6

1.66    Tort Claim .................................................................................................6

1.67    Trust Agreement .......................................................................................6

1.68    Unsecured Bonds ......................................................................................6

1.69    Unsecured Indentures ...............................................................................6

1.70    Unsecured Notes .......................................................................................7

ARTICLE II.    ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS ..........7

2.1    Administrative Expense Claims ...............................................................7

2.2    Compensation and Reimbursement Claims .............................................7

2.3    Fees Under 28 U.S.C. §1930 ...................................................................7

2.4    Priority Tax Claims ..................................................................................7

ARTICLE III.    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ..............................8

ARTICLE IV.    TREATMENT OF CLAIMS AND EQUITY INTERESTS ....................................8

4.1    Class 1 – Other Secured Claims ..............................................................8

4.2    Class 2 – Note and Bond Claims. ............................................................8

4.3    Class 3 - Priority Non-Tax Claims ..........................................................9

4.4    Class 4 - General Unsecured Claims ........................................................9

4.5    Class 5 - Equity Interests .......................................................................10

ARTICLE V.    PROVISIONS GOVERNING DISTRIBUTIONS ...............................................10

5.1    Distribution Record Date .......................................................................10

5.2    Method of Distributions Under the Plan .................................................10

5.3    Withholding and Reporting Requirements .............................................11

5.4    Time Bar to Cash Payments ...................................................................11

5.5    Minimum Distributions ..........................................................................11

5.6    Setoffs ....................................................................................................11

5.7    Transactions on Business Days ..............................................................12

5.8    Allocation of Plan Distribution Between Principal and Interest .............12

ARTICLE VI.    MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN ...........12

6.1    The Liquidating Trust ............................................................................12

6.2    Distributions to Holders as of the Distribution Record Date. ................15

6.3    Closing of Chapter 11 Case by Charitable Gift. ....................................15

iii

6.4     Release of Liens ................................................................................................16

6.5     Cancellation of Existing Securities and Agreements ........................................16

6.6     Liquidating Trustee's Post-Confirmation Role; Dissolution .............................16

6.7     Books and Records ............................................................................................17

6.8     Corporate Action ...............................................................................................17

6.9     Effectuating Documents and Further Transactions ...........................................18

6.10    Securities Exempt. .............................................................................................18

ARTICLE VII.     PROCEDURES FOR DISPUTED CLAIMS ..........................................18

7.1     Objections to Claims .........................................................................................18

7.2     No Distribution Pending Allowance .................................................................18

7.3     Resolution of Disputed Claims .........................................................................18

7.4     Estimation ..........................................................................................................18

7.5     Allowance of Disputed Claims ..........................................................................19

7.6     Distributions to Holders of Allowed Claims Upon Disallowance of Disputed
        Claims ................................................................................................................19

ARTICLE VIII.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............19

8.1     Executory Contracts and Unexpired Leases ......................................................19

8.2     Approval of Rejection of Executory Contracts and Unexpired Leases .............19

8.3     Rejection Claims ................................................................................................19

ARTICLE IX.     EFFECTIVENESS OF THE PLAN ........................................................20

9.1     Condition Precedent to Confirmation of Plan ...................................................20

9.2     Conditions Precedent to Effective Date ............................................................20

9.3     Satisfaction of Conditions .................................................................................20

9.4     Effect of Nonoccurrence of Conditions to Effective Date ................................20

ARTICLE X.     EFFECT OF CONFIRMATION ..............................................................21

10.1    Vesting of Assets ...............................................................................................21

10.2    Release of Assets ...............................................................................................21

10.3    Binding Effect. ...................................................................................................21

10.4    Term of Injunctions or Stays .............................................................................21

10.5    Causes of Action ................................................................................................21

10.6    Injunction ...........................................................................................................21

10.7    Injunction Against Interference with Plan .........................................................21

ARTICLE XI.     RETENTION OF JURISDICTION ........................................................22

iv

| | | |
|---|---|---|
| 11.1 | Jurisdiction of Bankruptcy Court | 22 |
| ARTICLE XII. | CRAMDOWN RESERVATION | 23 |
| 12.1 | Nonconsensual Confirmation | 23 |
| ARTICLE XIII. | MISCELLANEOUS PROVISIONS | 24 |
| 13.1 | Dissolution of Creditors' Committee and Retirees' Committee | 24 |
| 13.2 | Proof of Claim | 24 |
| 13.3 | Record Date | 24 |
| 13.4 | Substantial Consummation | 24 |
| 13.5 | Exemption from Transfer Taxes | 24 |
| 13.6 | Release of Authorized Agent and Former Officers and Directors of the Debtor | 24 |
| 13.7 | Release of Other Third Parties | 25 |
| 13.8 | Exculpation | 25 |
| 13.9 | Discharge of Claims and Termination of Equity Interests | 25 |
| 13.10 | Post-Confirmation Date Fees and Expenses | 25 |
| 13.11 | Payment of Statutory Fees | 26 |
| 13.12 | Modification of Plan | 26 |
| 13.13 | Revocation or Withdrawal of Plan | 26 |
| 13.14 | Courts of Competent Jurisdiction | 26 |
| 13.15 | Severability | 26 |
| 13.16 | Governing Law | 26 |
| 13.17 | Exhibits | 26 |
| 13.18 | Successors and Assigns | 27 |
| 13.19 | Time | 27 |
| 13.20 | Notices | 27 |

Case 03-bk-01802   Doc 2594-1   Filed 07/09/04   Entered 07/09/04 17:27:15   Desc
Exhibit A   Page 7 of 63

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | Jointly Administered at |
| | ) | Case No. 5:03-BK-1802 |
| WEIRTON STEEL CORPORATION, *et al.*, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Honorable L. Edward Friend, II |
| | ) | United States Bankruptcy Judge |

## PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Weirton Steel Corporation, the above-captioned parent debtor and debtor-in-possession, proposes the following chapter 11 plan of liquidation pursuant to section 1121(a) of title 11 of the United States Code:

### ARTICLE I.

### DEFINITIONS AND INTERPRETATION

**DEFINITIONS.** The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

**1.1** **Administrative Expense Claim** means any right to payment constituting a cost or expense of administration of any of the Chapter 11 Case allowed under sections 503(b), 507(a)(1), and 1114(e) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtor's estate; any actual and necessary costs and expenses of operating the Debtor's businesses; any indebtedness or obligations incurred or assumed by the Debtor, as debtor-in-possession, during the Chapter 11 Case, including, without limitation, for the acquisition or lease of property or an interest in property; or the rendition of services, any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under sections 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estate of the Debtor under section 1930 of chapter 123 of title 28 of the United States Code.

**1.2** **Allowed** means, with reference to any Claim, (i) any Claim against the Debtor that has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed in accordance with Section 7.1 hereof or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, or (iii) any Claim expressly allowed by a Final Order or hereunder.

**1.3** **Authorized Agent** means Robert C. Fletcher, as approved by that certain order of the Bankruptcy Court dated May 17, 2004, and where the term is used with respect to rights, powers or obligations on or after the Effective Date it shall mean the Liquidating Trustee.

1

**1.4** **Avoidance Actions** means any actions commenced, or that may be commenced, before or after the Effective Date pursuant to section 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code.

**1.5** **Bankruptcy Code** means title 11 of the United States Code, as amended from time to time, as applicable to this Chapter 11 Case.

**1.6** **Bankruptcy Court** means the United States District Court for the Northern District of West Virginia, having jurisdiction over this Chapter 11 Case and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over this Chapter 11 Case under section 151 of title 28 of the United States Code.

**1.7** **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to this Chapter 11 Case, and any Local Rules of the Bankruptcy Court.

**1.8** **Bonds** means $27,348,000 aggregate principal amount of Secured Pollution Control Revenue Refunding Bonds.

**1.9** **Bonus Pool** means the payments described at Section 4.2 hereof.

**1.10** **Business Day** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

**1.11** **Buyer** means ISG Weirton Inc., a wholly owned subsidiary of International Steel Group Inc.

**1.12** **Cash** means legal tender of the United States of America.

**1.13** **Causes of Action** means any and all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, claims, and demands whatsoever, other than Avoidance Actions, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Commencement Date or during the course of this Chapter 11 Case.

**1.14** **Chapter 11 Case** means the case under chapter 11 of the Bankruptcy Code commenced by Weirton on May 19, 2003 in the Bankruptcy Court and styled In re Weirton Steel Corporation, *et al.*, Case No. 5:03-BK-1802.

**1.15** **Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code.

**1.16** **Claims Register** means the list maintained by Donlin Recano & Company, Inc. listing all Claims as scheduled and/or filed in the Chapter 11 Case.

**1.17** **Class** means any group of Claims or Equity Interests classified by the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

**1.18** **Closing Date** means May 17, 2004, the effective date of the closing on the Sale Transaction.

**1.19** **COBRA** means the continuation coverage requirements under section 4980B of the Tax Code and Part 6 of Subtitle B of Title I of the Employee Retirement Income Security Act of 1974, as amended.

**1.20** **Collateral** means any property or interest in property of the estate of the Debtor subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

**1.21** **Commencement Date** means May 19, 2003.

**1.22** **Creditors' Committee** means the statutory committee of unsecured creditors appointed by the Office of the United States Trustee in this Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code, as the composition of the same has been or may be modified by the addition or removal of members from time to time.

**1.23** **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

**1.24** **Confirmation Hearing** means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.25** **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.26** **Debtor** means Weirton Steel Corporation, and where the term is used with respect to rights or obligations on or after the Effective Date, it shall mean the Liquidating Trustee.

**1.27** **Debtor Subsidiaries** means FW Holdings, Inc. and Weirton Venture Holdings Corporation.

**1.28** **Disbursing Agent** means the Liquidating Trustee and/or its counsel or other agent designated by the Liquidating Trustee in accordance with his powers under the Trust Agreement.

**1.29** **Disclosure Statement** means the disclosure statement relating to the Plan, including, without limitation, all exhibits thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.30** **Disputed** means, with respect to any Claim which has not been Allowed pursuant to the Plan or a Final Order,

(a) if no proof of claim has been filed by the applicable deadline: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtors or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or

(b) if a proof of claim or request for payment of an Administrative Expense Claim has been filed by the applicable deadline: (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of the Claim as asserted in the proof of claim varies from the nature and amount of such Claim as listed on the

3

Schedules; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; (iv) a Claim for which a timely objection or request for estimation is interposed by the Debtors which has not been withdrawn or determined by a Final Order; or (v) any Tort Claim.

**1.31** **Distribution Record Date** means the Confirmation Date.

**1.32** **Effective Date** means a Business Day on or after the Confirmation Date specified by the Debtors on which (i) no stay of the Confirmation Order is in effect, and (ii) the conditions to the effectiveness of the Plan specified in Section 9.2 hereof have been satisfied or waived.

**1.33** **Equity Interest** means the interest of any holder of an equity security of the Debtor represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in the Debtor, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

**1.34** **Estate** means the bankruptcy estate of Weirton Steel Corporation created in this chapter 11 case pursuant to section 541 of the Bankruptcy Code.

**1.35** **Final Order** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in this Chapter 11 Case which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired.

**1.36** **General Unsecured Claim** means any Claim against the Debtor that is (i) not an Administrative Expense Claim, Priority Tax Claim, Other Secured Claim, or Priority Non- Tax Claim, or (ii) otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

**1.37** **Indenture Trustees** means the trustees under the respective Secured Indentures, Unsecured Indentures and any successors or predecessors thereto.

**1.38** **Informal Committee** means the unofficial committee of senior secured noteholders of Weirton acting in these cases as the representative of the holders of Notes and Bonds.

**1.39** **Insurance Claim**. Any claim against the Debtor to the extent it may be covered and payable under any Insurance Policy of the Debtor.

**1.40** **Insurance Policy**. Any policy of insurance and agreements relating thereto covering the Debtor or that may be available to provide coverage for claims against the debtor.

**1.41** **Insurer**. Any entity that has issued an Insurance Policy to the Debtor.

**1.42** **ISG Agreement** means that certain Amended and Restated Asset Purchase Agreement by and among Buyer, International Steel Group, Inc. and the Debtor and the Debtor Subsidiaries dated as of February 25, 2004, as amended by (i) that certain Amendment No. 1, dated March 8, 2004; (ii) that

4

certain Amendment No. 2, dated April 21, 2004; and (iii) that certain Amendment No. 3 dated May 5, 2004.

**1.43** **J.P. Morgan** means J.P. Morgan Trust Company, National Association, the indenture trustee to the holders of Notes and Bonds.

**1.44** **Law** means any law, rule, regulation, order, decree or other requirement having the force of law and, where applicable, any interpretation thereof by an authority having jurisdiction with respect thereto or charged with administration thereof.

**1.45** **Lien** means a judicial lien as defined in section 101(36) of the Bankruptcy Code; a lien as defined in section 101(37) of the Bankruptcy Code; a security interest as defined in section 101(51) of the Bankruptcy Code; a statutory lien as defined in section 101(53) of the Bankruptcy Code; and any other lien, interest, charge or encumbrance.

**1.46** **Liquidating Trust** means that certain trust that will come into existence upon the Effective Date into which all of the assets, rights, powers and obligations of the Debtor will vest pursuant to the Plan, which trust shall be formed pursuant to and governed by the Trust Agreement.

**1.47** **Liquidating Trust Assets** means all of the assets of the Debtor and property of the Estate, including, but not limited to, the Causes of Action, and which shall vest in the Liquidating Trust on the Effective Date pursuant to the Plan and in accordance with the Trust Agreement.

**1.48** **Liquidating Trustee** means the trustee of the Liquidating Trust.

**1.49** **Notes** means $118,242,300 aggregate principal amount of 10% senior secured notes due 2008.

**1.50** **Other Secured Claim** means any Secured Claim against the Debtor that is not a Bond or Note and has not been either assumed by the Buyer or paid in full in Cash out of the proceeds of the Sale Transaction in accordance with the ISG Agreement and/or the order of the Bankruptcy Court approving same prior to the Confirmation Date.

**1.51** **PBGC** means the Pension Benefit Guaranty Corporation, a wholly-owned United States government corporation and an agency of the United States that administers the defined benefit pension plan termination insurance program under Title IV of ERISA.

**1.52** **Pension Plan** means the Weirton Steel Corporation Retirement Plan that was terminated by order dated November 21, 2003, of the United States District Court for the Northern District of West Virginia.

**1.53** **Person** has the meaning set forth in section 101(41) of the Bankruptcy Code.

**1.54** **Plan** means this chapter 11 plan of liquidation, including exhibits hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

**1.55** **Priority Non-Tax Claim** means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

Case 5:03-bk-01802    Doc 2594-1    Filed 07/09/04    Entered 07/09/04 17:27:15    Desc
Exhibit A    Page 12 of 63

**1.56    Priority Tax Claim** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.57    Pro Rata Share** means a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such Class.

**1.58    Retirees** means the Debtor's retired employees, such retired employees' spouses, and certain of such retired employees' dependents.

**1.59    Retirees' Committee** means the statutory committee of certain of the Debtor's retired employees appointed by the Bankruptcy Court by order dated June 2, 2003 in the Chapter 11 Case pursuant to section 1114(d) of the Bankruptcy Code.

**1.60    Sale Transaction** means the sale of substantially all assets of the Debtor and the Debtor Subsidiaries to the Buyer pursuant to the ISG Agreement and approved by the Bankruptcy Court by Order dated April 22, 2004.

**1.61    Schedules** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

**1.62    Secured Claim** means a Claim (i) secured by Collateral, to the extent of the value of such Collateral (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Debtor, or (c) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

**1.63    Settlement and Lockup Agreement** means the agreement among the Debtor, J.P. Morgan, the Informal Committee and its members settling the Claims of the holders of Notes and Bonds and approved by order of the Bankruptcy Court dated May 6, 2004.

**1.64    Secured Indentures** means the indentures with respect to the Notes and the Bonds.

**1.65    Tax Code** means title 26 of the United States Code, as amended from time to time.

**1.66    Tort Claim** means any Claim related to personal injury, property damage, products liability, wrongful death, employment litigation, or other similar Claims against any of the Debtors which arise out of events which occurred, in whole or in part, prior to the Commencement Date.

**1.67    Trust Agreement** means the agreement governing the Liquidating Trust dated as of the Effective Date, substantially in the form included in the Plan Supplement.

**1.68    Unsecured Bonds** means the remaining outstanding 8 5/8% 1989 City of Weirton, West Virginia Pollution Control Revenue Refunding Bonds (Weirton Steel Corporation Project) Series 1989 and dated as of November 1, 1989.

**1.69    Unsecured Indentures** means the indentures, as amended or supplemented, and all related documents, as amended or supplemented, with respect to (i) $125,000,000 original aggregate

6

principal amount of 11 3/8% senior notes due 2004 and dated as of July 3, 1996; (ii) $125,000,000 original aggregate principal amount of 10 3/4% senior notes due 2005 and dated as of June 12, 1995; (iii)and $56,300,000 original aggregate principal amount of 8 5/8% 1989 City of Weirton, West Virginia Pollution Control Revenue Refunding Bonds (Weirton Steel Corporation Project) Series 1989 and dated as of November 1, 1989.

**1.70    Unsecured Notes** means the remaining outstanding (i) 11 3/8% senior notes due 2004 and dated as of July 3, 1996 and (ii) 10 ¾% senior notes due 2005 and dated as of June 12, 1995.

**INTERPRETATION; APPLICATION OF DEFINITIONS AND RULES OF CONSTRUCTION.**

The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

**ARTICLE II.**

**ADMINISTRATIVE EXPENSE CLAIMS AND
PRIORITY TAX CLAIMS**

**2.1    Administrative Expense Claims.**  Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, on the Effective Date, or as soon thereafter as is reasonably practicable, the Debtor shall pay to each holder of an Allowed Administrative Expense Claim, in full satisfaction of such Claim, an amount in Cash equal to the Allowed amount of such Claim.

**2.2    Compensation and Reimbursement Claims.**  All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Confirmation Date, and (ii) shall be paid in full in such amounts as are allowed by the Bankruptcy Court (A) upon the date upon which the order relating to any such Administrative Expense Claim is entered, or (B) upon such other terms as may be mutually agreed upon between the holder of such an Administrative Expense Claim and the Debtor.

**2.3    Fees Under 28 U.S.C. §1930.**  All fees payable in the Chapter 11 Case under 28 U.S.C. §1930, as agreed by the Debtor or as determined by the Bankruptcy Court, will, if not previously paid in full, be paid in Cash on the Effective Date and will continue to be paid by the Debtor as required under 28 U.S.C. §1930 until such time as an order is entered by the Bankruptcy Court closing the Chapter 11 Case.

**2.4    Priority Tax Claims.**  Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, on the Effective Date, or as soon thereafter as is reasonably practicable, the Debtor shall pay to each holder of an Allowed Priority Tax Claim, after payment of up to $6.0 million to Class 2 Claims (including the Bonus Pool, as defined below), the greater of a Pro Rata Share of all available cash or an amount in Cash equal to the Allowed amount of such Claim.

**ARTICLE III.**

Case 03-01802    Doc 2594-1    Filed 07/09/04    Entered 07/09/04 17:27:15    Desc
Exhibit A    Page 14 of 63

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The following table designates the Classes of Claims against and Equity Interests in the Debtor and specifies which of those Classes are (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to reject the Plan:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Other Secured Claims | Unimpaired | No |
| Class 2 | Note and Bond Claims | Impaired | Yes |
| Class 3 | Priority Non-Tax Claims | Impaired | Yes |
| Class 4 | General Unsecured Claims | Impaired | Yes |
| Class 5 | Equity Interests | Impaired | No (deemed to reject) |

For convenience of identification, the Plan classifies the Allowed Claims in Class 1 as a single Class. This Class is actually a group of subclasses, depending on the underlying property securing such Allowed Claims, and each subclass is treated hereunder as a distinct Class for voting and distribution purposes.

## ARTICLE IV.

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1    Class 1 – Other Secured Claims.**  On or as soon as reasonably practicable after the Effective Date, each holder of an Allowed Other Secured Claim shall receive, at the option of the Debtor, and in full satisfaction of such Claim, either (i) Cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Other Secured Claim, (ii) the proceeds of the sale or disposition of the Collateral securing such Allowed Other Secured Claim to the extent of the value of the holder's secured interest in the Allowed Other Secured Claim, net of the costs of disposition of such Collateral, or (iii) such other distribution as necessary to satisfy the requirements of the Bankruptcy Code. In the event the Debtor treats a Claim under clause (i) or (ii) of this Section 4.1, the liens securing such Other Secured Claim shall be deemed released.

**4.2    Class 2 – Note and Bond Claims.**

*Payment of Claims*.  In addition to the $30.0 million paid by the Debtor with respect to Allowed Class 2 Claims on the Closing Date, in accordance with the Settlement and Lockup Agreement, after payment by the Debtor of all Allowed Administrative Expense Claims under Section 2.1, including compensation and reimbursement claims under Section 2.2, and after the Debtor has liquidated all of its remaining assets that are reasonably able to be liquidated, the Debtor shall pay the lesser of Six Million ($6,000,000) Dollars, less 10% of the recovery by Class 2 claimants between $32 million and $36 million (the "Bonus Pool"), or all remaining assets in the Debtor's Estate, less the Bonus Pool, to the order of J.P. Morgan for the benefit of Class 2 claims.  To the extent practical, the Debtor may make earlier distributions consistent with the needs of the Debtor's Estate.

*Incorporation by Reference of Settlement and Lockup Agreement*.  The Settlement and Lockup Agreement is attached to this Plan and incorporated herein by reference as Exhibit 1.  To the extent any provision of the Settlement and Lockup Agreement conflicts with any provision of this Plan, the terms and conditions of the Settlement and Lockup Agreement shall control.

*Cancellation of Notes, Bonds and Related Instruments*:  As of the Effective Date, all Notes, Bonds, security agreements, deeds of trust, collateral agency agreements and all indentures, agreements, instruments and other documents evidencing or securing the Note and Bond Claims and the rights of holders thereof, including, without limitation, the Secured Indentures, shall be cancelled and deemed null and void and of no further force and effect (all without further act or action), and all obligations of any Person (including, without limitation, J.P. Morgan as the indenture trustee to the Notes and Bonds) under such instruments and agreements shall be fully satisfied and released.  Notwithstanding the foregoing, such cancellation shall not impair the rights and duties under the Secured Indentures as among the respective indenture trustees to the Notes, the Bonds and the beneficiaries of the trusts created thereby.

*Reporting Requirements*:  Pursuant to the Settlement and Lockup Agreement, Weirton and a subcommittee (""Subcommittee") of the Informal Committee agreed upon the post-Closing Date reporting requirements of Weirton, which generally include information relating to expenditures during the winddown period, administrative claims status and revenue received by the Debtor's Estate on a post-Closing Date basis.  Weirton and the Subcommittee also agreed to a 24 to 30 week static budget for the winddown period, excluding the projected fees and expenses of McGuireWoods LLP (the "Budget").  Following the Closing Date, on a weekly basis, Weirton is obligated to provide to the Subcommittee a rolling four week forecast measured against the Budget.  The Debtor shall meet and confer with the Subcommittee at reasonable times in order to discuss information reported by the Debtors.  Weirton's reporting requirements under Section 22 of the Settlement and Lockup Agreement shall continue until Class 2 Claims are paid in full or the Liquidating Trustee has disbursed all of the assets of the Liquidating Trust, whichever occurs first.

**4.3     Class 3 - Priority Non-Tax Claims.**  Except to the extent that a holder of an Allowed Priority Non-Tax Claim against the Debtor agrees to a different treatment of such Claim, on the Effective Date, or as soon thereafter as is reasonably practicable, each such holder shall receive a Pro Rata Share of all remaining Cash after payment of all Allowed Claims in sections 2.1, 2.2, 2.3, 4.1 and 4.2, on the Effective Date or as soon thereafter as is practicable.

**4.4     Class 4 - General Unsecured Claims.**  The holders of Allowed General Unsecured Claims shall receive their Pro Rata Share of all remaining Cash after payment in full of all Allowed Claims pursuant to sections 2.1, 2.2, 2.3, 4.1, 4.2 and 4.3, on the Effective Date or as soon thereafter as is practicable.

*Cancellation of Unsecured Notes, Unsecured Bonds and Related Instruments*:  As of the Effective Date, all Unsecured Notes, Unsecured Bonds, and all indentures, agreements, instruments and other documents evidencing the Unsecured Note and Unsecured Bond Claims and the rights of holders thereof, including, without limitation, the Unsecured Indentures, shall be cancelled and deemed null and void and of no further force and effect (all without further act or action), and all obligations of any Person (including, without limitation, the Indenture Trustees under the Unsecured Indentures) under such instruments and agreements shall be fully satisfied and released, *provided, however*, that the Unsecured Notes and Bonds and the Unsecured Indentures shall continue in effect solely for the purposes of (i) allowing the holders of the Unsecured Notes and the Unsecured Bonds to receive their distributions hereunder, (ii) allowing the Indenture Trustees under the Unsecured Indentures to make the distributions, if any, to be made on account of the Unsecured Notes and the Unsecured Bonds, and (iii) permitting the Indenture Trustees under Unsecured Indentures to assert charging liens against such distributions.

Case 03-bk-01802    Doc 2594-1    Filed 07/09/04    Entered 07/09/04 17:27:15    Desc
Exhibit A    Page 16 of 63

**4.5** **Class 5 - Equity Interests.** All Equity Interests issued by Weirton shall be cancelled on the Effective Date. Each holder of an Equity Interest shall neither receive nor retain any property or interest in property on account of such Equity Interest. On or promptly after the Effective Date, Weirton will file with the United States Securities and Exchange Commission a Form 15 for the purpose of terminating the registration of any of its publicly traded securities.

**ARTICLE V.**

**PROVISIONS GOVERNING DISTRIBUTIONS**

**5.1** **Distribution Record Date.** As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtor, or its agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Equity Interests. The Debtor and the Indenture Trustees, as the case may be, shall have no obligation to recognize any transfer of the Claims or Equity Interests occurring on or after the Distribution Record Date. The Debtor and the Indenture Trustees, as the case may be, shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

**5.2** **Method of Distributions Under the Plan.**

(a) **Effective Date Payments and Transfers by the Debtor.** On the Effective Date, or as soon thereafter as is reasonably practicable, the Debtor shall remit to holders of Allowed Claims an amount in Cash equal to the Allowed amount of such Claims or in such other amounts as set forth in the Plan.

(b) **Disbursing Agent.** All distributions under the Plan will be made by the Disbursing Agent. The Disbursing Agent will not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and in the event that the Disbursing Agent is otherwise so ordered, all costs and expenses of procuring any such bond or surety will be borne by the Debtor. The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) make all distributions contemplated in the Plan, (iii) employ professionals to represent it with respect to its responsibilities under the Plan and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan. Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including without limitation, taxes) and any reasonable compensation and expense reimbursement claims (including, without limitation, reasonable attorneys' fees and other professional fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Debtor.

(c) **Distributions of Cash.** At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

(d) **Delivery of Distributions.** Subject to Bankruptcy Rule 9010, unless otherwise provided in the Plan, all distributions to any holder of an Allowed Claim will be made to the holder of each Allowed Claim at the address of such holder as listed in the Schedules, or on the books and records of the Debtor or its agents unless the Debtor has been notified, in advance, in writing of a change of address, including, without limitation, by the timely filing of a proof of claim or interest by such holder

Case 03-bk-01802    Doc 2594-1    Filed 07/09/04    Entered 07/09/04 17:27:15    Desc
Exhibit A    Page 17 of 63

that provides an address for such holder different from the address reflected in the Schedules or in the Debtor's books and records. In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder will be made unless and until the Disbursing Agent has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter, such distribution will be made to such holder without interest; provided, however, that, such undeliverable distributions will be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 90 days after the date of distribution in accordance with the section on Unclaimed Distributions below. The Disbursing Agent will have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Schedules and its books and records (including any proofs of claim filed against the Debtor).

(e) **Delivery of Distributions With Respect to Holders of Notes, Bonds, Unsecured Notes and Unsecured Bonds.** On the Effective Date, or as soon thereafter as is practicable, the distributions to be made under the Plan to holders of Class 2 Claims shall be made to J.P. Morgan, and the distributions to holders of Class 4 Claims on account of the Unsecured Notes and the Unsecured Bonds shall be made to the respective Indenture Trustee under the Unsecured Indentures. None of the Indenture Trustees shall be required to give any bond or surety or other security for the performance of their duties. Notwithstanding the foregoing, distributions to holders of Class 2 Claims shall be made by J.P. Morgan in accordance with the Secured Indentures, and distributions to holders of the Unsecured Notes and Unsecured Bonds shall be made by the respective Indenture Trustee under the Unsecured Indentures, subject in each instance to the rights of the Indenture Trustees under the applicable Secured Indentures or the Unsecured Indentures, as the case may be, including, without limitation, their right to assert charging liens against such distributions.

5.3     **Withholding and Reporting Requirements.** In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

5.4     **Time Bar to Cash Payments.** Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the sixty (60) day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to the Debtor and any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor and its property.

5.5     **Minimum Distributions.** No payment of Cash less than $10 shall be made by the Disbursing Agent. Any Assets of the Estate that are undistributable in accordance with this Section 5.5 shall be distributed to a charitable organization exempt from federal income tax under section 501(c)(3) of the Tax Code to be selected by, and unrelated to, the Debtors as contemplated by Section 6.2 hereof.

5.6     **Setoffs.** The Debtor may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that the Debtor may have against the holder of such Claim, excluding, however, claims of the Debtor relating to Avoidance Actions (which have been waived in accordance with and related to the ISG Agreement), but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim the Debtor may have against the holder of such Claim.

**5.7    Transactions on Business Days**.  If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

**5.8    Allocation of Plan Distribution Between Principal and Interest.**  All distributions in respect of any Allowed Claim shall be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

**ARTICLE VI.**

**MEANS FOR IMPLEMENTATION AND
EXECUTION OF THE PLAN**

**6.1    The Liquidating Trust**

(a)    **Execution of Trust Agreement**.  On the Effective Date, the Trust Agreement shall be executed, and all other necessary steps shall be taken to establish the Liquidating Trust and the beneficial interests therein, which shall be for the benefit of all creditors and parties in interest entitled to receive a distribution under the Plan.  This Section 6.1 sets forth certain of the rights, duties, and obligations of the Trustee.  In the event of any conflict between the terms of this Section 6.1 and the terms of the Trust Agreement, the terms of the Trust Agreement shall govern.

(b)    **Purpose of Liquidating Trust**.  The Liquidating Trust shall be established for the sole purpose of liquidating and distributing its assets, in accordance with Treasury Regulation section 30.1.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

(c)    **Liquidating Trust Assets**.   The Liquidating Trust shall consist of the Liquidating Trust Assets. Any Cash or other property received from third parties from the prosecution, settlement, or compromise of any Cause of Action or otherwise shall constitute Liquidating Trust Assets for purposes of distributions under the Liquidating Trust. On the Effective Date, the Liquidating Trust Assets shall automatically vest in the Liquidating Trust as set forth in Section 10.1 of the Plan, free and clear of all Liens, Claims and encumbrances, except to the extent otherwise provided herein.

(d)    **Governance of Liquidating Trust**.  The Liquidating Trust shall be governed by the Liquidating Trustee in accordance with the Trust Agreement and consistent with the Plan.

(e)    **The Liquidating Trustee**.  The Liquidating Trustee shall be designated on or before the Effective Date by the Debtor. The designation of the Liquidating Trustee shall be effective on the Effective Date without the need for a further order of the Bankruptcy Court.  Robert C. Fletcher, the Debtor's current Authorized Agent, is eligible to be selected as the Liquidating Trustee.

(f)    **Nontransferability of Liquidating Trust Interests**.  The beneficial interests in the Liquidating Trust shall not be certificated and are not transferable (except as otherwise provided in the Trust Agreement).

(g)    **Cash**.  The Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code; *provided*, *however*, that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation

Case 03-bk-01802    Doc 2594-1    Filed 07/09/04    Entered 07/09/04 17:27:15    Desc
Exhibit A    Page 19 of 63

section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

(h) **Costs and Expenses of the Liquidating Trustee**. The costs and expenses of the Liquidating Trust, including the fees and expenses of the Liquidating Trustee and its retained professionals, shall be paid out of the Liquidating Trust Assets. Such costs and expenses shall be considered administrative expenses of the Debtor's estates.

(i) **Compensation of the Liquidating Trustee**. The Liquidating Trustee shall be entitled to reasonable compensation, which shall be on the same economic terms as the compensation previously authorized by the Bankruptcy Court to be paid to the Authorized Agent.

(j) **Distribution of Liquidating Trust Assets**. The Liquidating Trustee shall distribute at least annually and in accordance with the Trust Agreement, beginning on the Effective Date or as soon thereafter as is practicable, the Liquidating Trust Assets on hand (including any Cash received from the Debtors on the Effective Date, and treating as Cash for purposes of this Section 6.1 any permitted investments under Section 6.1(g) hereof), except such amounts (i) as would be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed prior to the time of such distribution (but only until such Claim is resolved), (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (iii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets), and (iv) to satisfy other liabilities incurred by the Liquidating Trust in accordance with this Plan or the Trust Agreement.

(k) **Retention of Professionals by the Liquidating Trustee**. The Liquidating Trustee may retain and reasonably compensate counsel and other professionals to assist in its duties as Liquidating Trustee on such terms as the Liquidating Trustee deems appropriate without Bankruptcy Court approval. The Liquidating Trustee may retain any professional who represented parties in interest (including the Debtor) in the Chapter 11 Case.

(l) **Federal Income Tax Treatment of Liquidating Trust**.

(i) **Liquidating Trust Assets Treated as Owned by Creditors**. For all federal income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the holders of beneficial interests in the Liquidating Trust) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the beneficiaries thereof, whether Allowed on or after the Effective Date, as (A) a transfer of the Liquidating Trust Assets directly to the holders of satisfaction of such Claims (other than to the extent allocable to Disputed General Unsecured Claims) followed by (B) the transfer by such holders to the Liquidating Trust of the Liquidating Trust Assets in exchange for beneficial interests in the Liquidating Trust. Accordingly, the holders of such Claims shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Liquidating Trust Assets.

(ii) **Tax Reporting**.

(a) The Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 6.2(m). The Trustee shall also annually send to each record holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and will instruct all such holders to report such items on their federal income tax returns or to forward the appropriate information to the beneficial holders with instructions to report such items on their federal

Case 03-01802   Doc 2594-1   Filed 07/09/04   Entered 07/09/04 17:27:15   Desc
Exhibit A   Page 20 of 63

income tax returns. The Liquidating Trust's taxable income, gain, loss, deduction, or credit will be allocated (subject to Section 6.1(m)(ii)(c) hereof, relating to Disputed General Unsecured Claims) to the holders of Allowed General Unsecured Claims in accordance with their relative beneficial interests in the Liquidating Trust.

(b)     As soon as possible after the Effective Date, but in no event later than ninety (90) days after the Effective Date, the Trustee shall make a good faith valuation of the Liquidating Trust Assets. Such valuation shall be. made available from time to time, to the extent relevant, and used consistently by all parties (including, without limitation the Debtors, the Trustee, and the holders of Allowed General Unsecured Claims) for all federal income tax purposes. The Trustee shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any governmental, unit.

(c)     Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Trustee of a private letter ruling if the Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Trustee), the Trustee shall (i) treat any Liquidating Trust Assets allocable to, or retained on account of, Disputed General Unsecured Claims as held by one or more discrete trusts for federal income tax purposes (the "Liquidating Trust Claims Reserve"), consisting of separate and independent shares to he established in respect of each Disputed General Unsecured Claim, in accordance with the trust provisions of the Tax Code (section 641 *et seq*.), (ii) treat as taxable income or loss of the Liquidating Trust Claims Reserve, with respect to any given taxable year, the portion of the taxable income or loss of the Liquidating Trust that would have been allocated to the holders of Disputed General Unsecured Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved), (iii) treat as a distribution from the Liquidating Trust Claims Reserve any increased amounts distributed by the Liquidating Trust as a result of any Disputed General Unsecured Claims resolved earlier in the taxable year, to the extent such distributions relate to taxable income or loss of the Liquidating Trust Claims Reserve determined in accordance with the provisions hereof, and (iv) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes. All holders of General Unsecured Claims shall report, for tax purposes, consistent with the foregoing.

(d)     The Trustee shall be responsible for payments, out of the Liquidating Trust Assets, of any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets, including the Liquidating Trust Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed General Unsecured Claims in the Liquidating Trust Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed General Unsecured Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed General Unsecured Claims, or (ii) to the extent such Disputed General Unsecured Claims have subsequently been resolved, deducted from any amounts distributable by the Trustee as a result of the resolutions of such Disputed General Unsecured Claims.

(e)     The Trustee may request an expedited determination of taxes of the Liquidating Trust, including the Liquidating Trust Claims Reserve, under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

(m)     **Dissolution**.  The Liquidating Trust and the Liquidating Trustee shall be discharged or dissolved, as the case may be, at such time as (i) all Disputed General Unsecured Claims have been resolved, (ii) all Liquidating Trust Assets have been liquidated, and (iii) all distributions required to be made by the Liquidating Trustee under the Plan have been made, but in no event shall the

Liquidating Trust be dissolved later than twelve (12) months from the Effective Date unless the Bankruptcy Court, upon motion within the two (2) month period prior to the twelve (12) month anniversary (and, in the case of any extension, within two (2) months prior to the end of such extension), determines that a fixed period extension (not to exceed twelve (12) months, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets or the dissolution of Weirton. The Liquidating Trustee shall not unduly prolong the duration of the Liquidating Trust and shall at all times endeavor to resolve, settle or otherwise dispose of all claims that constitute Liquidating Trust Assets and to effect the distribution of the Liquidating Trust Assets in accordance with the terms hereof and terminate the Liquidating Trust as soon as practicable. Prior to and upon termination of the Liquidating Trust, the Liquidating Trust Assets will be distributed to the beneficiaries of Liquidating Trust, pursuant to the provisions set forth in Section 3.6 of the Liquidating Trust and the Plan.

(n) **Indemnification of Liquidating Trustee**. The Liquidating Trustee or the individuals comprising the Liquidating Trustee, as the case may be, and the Liquidating Trustee's agents and professionals, shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Liquidating Trustee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trustee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty; or *ultra vires* acts. Any indemnification claim of the Liquidating Trustee (and the other parties entitled to indemnification under this subsection (o)) shall be satisfied first from the Trustee Expense Fund and then from the Liquidating Trust Assets. The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

6.2 **Distributions to Holders as of the Distribution Record Date.** As of the close of business on the Distribution Record Date, the Claims Register, the equity register and transfer and other registers as maintained by the Debtor and its respective agents, as applicable, will be closed and there will be no further changes in the record holder of any Claim or Equity Interest. The Debtor will have no obligation to recognize any transfer of any Claim or Equity Interest occurring after the Distribution Record Date. The Debtor will instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the Claims Register and equity register and other registers as of the close of business on the Distribution Record Date.

6.3 **Closing of Chapter 11 Case by Charitable Gift.** If at any time the Liquidating Trustee determines that the expense of administering the Liquidating Trust so as to make a final distribution to Allowed Claims is likely to exceed the value of the assets remaining in the estate, the Liquidating Trustee shall apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to close the Chapter 11 Case, (ii) donate any balance to a charitable organization exempt from federal income tax under section 501(c)(3) of the Tax Code that is unrelated to Weirton and any insider of Weirton, and (iii) close the Chapter 11 Case in accordance with the Bankruptcy Code and Bankruptcy Rules. If the aims or purposes of any charities satisfying the conditions of clause (ii) above relate to benefiting the residents of Weirton, West Virginia, then the Liquidating Trustee shall choose any recipients of any donations from among such charities. Notice of such application shall be given electronically, to the extent practicable, to those parties who have filed requests for notices and whose electronic addresses remain current and operating.

Case 03-bk-01802   Doc 2594-1   Filed 07/09/04   Entered 07/09/04 17:27:15   Desc
Exhibit A   Page 22 of 63

**6.4** **Release of Liens** Except as otherwise specifically provided in or contemplated by the Plan or in any contract, instrument or other agreement or document created in connection with the Plan, (i) each holder of: (a) any purported Secured Claim; and/or (b) any judgment, personal property or ad valorem tax, mechanics' or similar Lien Claim, in each case regardless of whether such Claim is an Allowed Claim, shall, on or immediately before the Effective Date and regardless of whether such Claim has been scheduled or proof of such Claim has been filed: (y) turn over and release to the Estate any and all property of the Debtor or Estate that secures or purportedly secures such Claim, or such Lien and/or Claim shall automatically, and without further action by the Debtor or the Estate, be deemed released; and (z) execute such documents and instruments as the Disbursing Agent requires to evidence the holder of a Claim's release of such property or Lien, and if such holder refuses to execute appropriate documents or instruments, the Debtor or the Estate may, in its discretion, file a copy of the Confirmation Order in the appropriate recording office, which shall serve to release any holder of a Claim's rights in such property; and (ii) on the Effective Date, all right, title and interest in such property shall revert or be transferred to the Debtor or the Disbursing Agent, as applicable, free and clear of all Claims, interests, and Liens of any kind. Notwithstanding this Section 6.4 or any other provision in the Plan or the Confirmation Order, the charging liens of the Indenture Trustees shall remain unaffected and shall survive the Effective Date.

**6.5** **Cancellation of Existing Securities and Agreements**. On the Effective Date, except as expressly provided in this Plan, the securities, promissory notes (including the Notes, Bonds, Unsecured Notes and Unsecured Bonds), trust indentures (including the Secured Indentures and the Unsecured Indentures), share certificates, security agreements, deeds of trust, collateral agency agreements and other instruments evidencing or securing a Claim or Equity Interest shall be deemed cancelled without further act or action under any applicable agreement or Law, and the obligations of the Debtor under the agreements, instruments, trust indentures and certificates governing and securing such Claims and Equity Interests, as the case may be, shall be discharged.

**6.6** **Liquidating Trustee's Post-Confirmation Role; Dissolution**. All rights and obligations of the Debtor under this Plan that continue on or after the Effective Date shall vest in the Liquidating Trustee and shall be rights and obligations exercisable by the Liquidating Trustee on and after the Effective Date. Further, the Liquidating Trustee shall perform each of the following acts as soon as practicable on or after the Effective Date:

(a) **General Powers.** In furtherance of and consistent with the purpose of the Liquidating Trust and the Plan, the Liquidating Trustee shall (A) have the power and authority to hold, manage, sell, and distribute the Liquidating Trust Assets in accordance with the Plan, (B) have the power and authority to prosecute and resolve, in the name of the Debtor and/or the name of the Liquidating Trustee, the Causes of Action, (C) have the power and authority to prosecute and resolve objections to Disputed Claims, (D) have the power and authority to perform such other functions as are provided in the Plan, and (E) have the power and authority to administer the closure of the Chapter 11 Cases. The Liquidating Trustee shall be responsible for all decisions and duties with respect to the Liquidating Trust and the Liquidating Trust Assets. In all circumstances, the Liquidating Trustee shall act in the best interests of all beneficiaries of the Liquidating Trust and in furtherance of the purpose of the Liquidating Trust.

(b) **Payments and Transfers.** On the Effective Date, or as soon thereafter as is reasonably practicable, the Liquidating Trustee shall make payments and transfers to holders of Allowed Claims to claimants in the manner set forth at Sections 2.1, 2.2, 2.3, 4.1, 4.2, 4.3 and 4.4 hereof, and in accordance with Section 5.2 hereof.

(c) **Administration of Taxes.** After the certificate of cancellation, dissolution, or merger for the Debtor has been filed in accordance with Section 6.6(e) hereof, the Liquidating Trustee

Case 03-bk-01802    Doc 2594-1    Filed 07/09/04    Entered 07/09/04 17:27:15    Desc
Exhibit A    Page 23 of 63

shall be authorized to exercise all powers regarding the Debtors' tax matters, including filing tax returns, to the same extent as if the Liquidating Trustee were the debtor in possession. The Liquidating Trustee shall (A) complete and file within ninety (90) days of the filing for dissolution by Weirton, to the extent not previously filed, the Debtors' final federal, state, and local tax returns, (B) request an expedited determination of any unpaid tax liability of the Debtor under section 505(b) of the Bankruptcy Code for all tax periods of the Debtor ending after the Commencement Date through the liquidation of the Debtor as determined under applicable tax laws, to the extent not previously requested, and (C) represent the interest and account of the Debtor before any taxing authority in all matters, including, but not limited to, any action, suit, proceeding, or audit.

(d)     **Claims Administration and Prosecution and Plan Distributions.**     The Liquidating Trustee shall have the power and authority to prosecute and resolve objections to Disputed Administrative Expense Claims, Disputed Priority Tax Claims, Disputed Other Secured Claims, and Disputed Priority Non-Tax Claims. The Liquidating Trustee shall also have the power and authority to hold, manage, and distribute Plan distributions to the holders of Allowed Claims consistent with applicable provisions of this Plan.

Notwithstanding the foregoing, all Insurance Claims that arose prior to the Commencement Date shall be deemed Allowed in the greater of (i) an amount equal to (x) the amount of any remaining self-insured retention under the Insurance Policy applicable to such Insurance Claim, divided by (y) the number of Insurance Claims to which the applicable Insurance Policy and self-insured retention applies; and (ii) $0.00.  The allowance of an Insurance Claim pursuant to this provision shall not be deemed an admission of liability by Weirton, and therefore shall not be conclusive as to Weirton's liability in any proceeding by the holder of an Insurance Claim against an Insurer.

(e)     **Dissolution.**     Upon the completion of the acts required by the Plan to create the Liquidating Trust and to appoint the Liquidating Trustee, the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor; *provided, however,* that the Debtor shall file with the office of the Secretary of State of Delaware a certificate of cancellation or dissolution.

6.7     **Books and Records.**     Unless applicable nonbankruptcy law permits the distribution or destruction of certain of the Debtor's business records at an earlier date, the Liquidating Trustee shall have the responsibility of storing and maintaining books and records until one year after the Effective Date, after which time such books and records may be abandoned or destroyed without further Bankruptcy Court order.  For purposes of this Section, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtors maintained by or in possession of third parties and all of the claims and rights of the Debtors in and to their books and records, wherever located.

6.8     **Corporate Action.**     Upon the Effective Date, the Debtor, through its Authorized Agent, shall perform each of the actions and effect each of the transfers required by the terms of the Plan, in the time period allocated therefor, and all matters provided for under the Plan that would otherwise require approval of the stockholders, directors, or comparable governing bodies of the Debtor shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law (or other applicable governing law) of the state in which the Debtor is incorporated or organized, without any requirement of further action by the stockholders or directors (or other governing body) of the Debtor.  The Debtor shall be authorized and directed, following the completion of all actions required of the Debtor by the Plan, to file its certificate of cancellation or dissolution as contemplated by Section 6.6(e) hereof.  The filing of such certificate of cancellation or dissolution shall be authorized and

approved in all respects without further action under applicable law, regulation, order, or rule, including, without express or implied limitation, any action by the stockholders or directors (or other governing body) of the Debtor.

**6.9     Effectuating Documents and Further Transactions.**  The Authorized Agent, on behalf of the Debtor, is authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**6.10     Securities Exempt**.  The beneficial interests in the Liquidating Trust satisfy the requirements of section 1145 of the Bankruptcy Code and, therefore, such interests are exempt from registration under the Securities Act of 1933, as amended, and any state or local law requiring registration.

## ARTICLE VII.

## PROCEDURES FOR DISPUTED CLAIMS

**7.1     Objections to Claims.**  The Debtor, and from and after the Effective Date the Liquidating Trustee, shall be entitled to object to Administrative Expense Claims, Priority Tax Claims, Other Secured Claims and Priority Non-Tax Claims, and to the extent necessary, General Unsecured Claims.

**7.2     No Distribution Pending Allowance.**  Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim

**7.3     Resolution of Disputed Claims.**  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, following the Effective Date, the Debtor shall have the right to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under sections 330 and 503 of the Bankruptcy Code) to make and file objections to Claims and shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable, but in no event later than sixty (60) days after the Effective Date. From and after the Confirmation Date, all objections shall be litigated to a Final Order except to the extent the Debtor elects to withdraw any such objection or the Debtor and the holder of a Claim elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim, subject to the approval of the Bankruptcy Court.

**7.4     Estimation.**  The Debtor may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. On and after the Confirmation Date, Claims that have been estimated may be compromised, settled, withdrawn, or otherwise resolved subsequently, without further order of the Bankruptcy Court.

Case 03-bk-01802     Doc 2594-1     Filed 07/09/04     Entered 07/09/04 17:27:15     Desc
Exhibit A     Page 25 of 63

**7.5** __Allowance of Disputed Claims.__ If, on or after the Effective Date, any Disputed Claim becomes, in whole or in part, an Allowed Claim, the Debtor shall, no later than the fifteenth (15th) Business Day of the first month following the month in which the Disputed Claim becomes an Allowed Claim, distribute to the holder thereof the distributions, if any, that such holder would have received had its Claim been Allowed on the Effective Date, except as otherwise provided herein.

**7.6** __Distributions to Holders of Allowed Claims Upon Disallowance of Disputed Claims.__ Subject to section 6.2 hereof, upon disallowance of any Disputed Claim, each holder of an Allowed Claim in the same Class as the disallowed Disputed Claim will be entitled to its Pro Rata Share of Cash equal to the distribution that would have been made in accordance with the Plan to the holder of such Disputed Claim had such Disputed Claim been an Allowed Claim on or prior to the Effective Date. Such distributions on account of disallowed Disputed Claims will be made as soon as practicable after the fifteenth business day following allowance or disallowance of the last Disputed Claim. Upon allowance or disallowance of all or a portion of such Disputed Claims, the Debtor will make appropriate distributions in accordance with the Plan.

**ARTICLE VIII.**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**8.1** __Executory Contracts and Unexpired Leases.__ On the Effective Date, all executory contracts and unexpired leases to which the Debtor is a party shall be deemed rejected as of the Effective Date, except for an executory contract or unexpired lease that (i) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court entered prior to the Effective Date or (ii) is the subject of a separate motion to assume or reject filed under section 365 of the Bankruptcy Code by the Debtor prior to the Effective Date.

Notwithstanding the foregoing, the Debtor's current year Insurance Policies and any agreements, documents or instruments relating thereto, are postpetition contracts and shall continue to operate unaffected by the Plan, with the Insurers responsible for claims in accordance with the terms and provisions of such Insurance Policies. The Debtor's Insurance Policies that have expired as of the Confirmation Date (whether entered into prior or subsequent to the Commencement Date) are not executory contracts subject to assumption or rejection. The Insurers shall be responsible for continuing coverage obligations under such Insurance Policies.

Nothing contained in the Plan shall constitute or be deemed to be a waiver of any cause of action that the Debtor may hold against any entity, including, without limitation, any Insurer under any of the Debtor's Insurance Policies.

**8.2** __Approval of Rejection of Executory Contracts and Unexpired Leases.__ Entry of the Confirmation Order shall constitute the approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected as of the Effective Date pursuant to the Plan.

**8.3** __Rejection Claims.__ In the event that the rejection of an executory contract or unexpired lease by the Debtor pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtor or any property to be distributed under the Plan unless a proof of claim is filed with the Bankruptcy Court and served upon the Debtor on or before the date that is thirty (30) days after the Confirmation Date.

19

# ARTICLE IX.

## EFFECTIVENESS OF THE PLAN

**9.1** **Condition Precedent to Confirmation of Plan.** The following are conditions precedent to the confirmation of the Plan:

(a) The Bankruptcy Court shall have entered a Confirmation Order in form and substance satisfactory to the Debtor; and

(b) The Bankruptcy Court enters the Confirmation Order on or before September 7, 2004, or J.P. Morgan, the Informal Committee and its members waive the requirement of Section 6(b) of the Settlement and Lockup Agreement.

**9.2** **Conditions Precedent to Effective Date.** The following are conditions precedent to the Effective Date of the Plan:

(a) No stay of the Confirmation Order shall then be in effect; and

(b) The Debtor shall have sufficient Cash to pay the sum of (i) Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Secured Claims, and Allowed Priority Non-Tax Claims, and the Debtor's professional fees that have not been paid, (ii) an amount that would be required to distribute to the holders of Disputed Administrative Expense Claims, Disputed Priority Tax Claims, Disputed Other Secured Claims, and Disputed Priority Non-Tax Claims if all such Claims are subsequently Allowed, as set forth more fully in Article VII hereof, and (iii) an amount that would be required to satisfy all the Debtor's costs and expenses in connection with the Debtor's obligations under the Plan.

(c) Substantial Consummation will or is likely to occur on or before September 30, 2004, or J.P. Morgan, the Informal Committee and its members waive the requirement of Section 6(c) to the Settlement and Lockup Agreement.

**9.3** **Satisfaction of Conditions.** Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. If the Debtor decides that one of the conditions precedent set forth in Section 9.2 hereof cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Debtor shall file a notice of the failure of the Effective Date with the Bankruptcy Court.

**9.4** **Effect of Nonoccurrence of Conditions to Effective Date.** If each of the conditions to consummation and the occurrence of the Effective Date has not been satisfied or duly waived on or before September 30, 2004, the Confirmation Order may be vacated by the Bankruptcy Court. If the Confirmation Order is vacated pursuant to this Section, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims against the Debtor.

Case 03-bk-01802    Doc 2594-1    Filed 07/09/04    Entered 07/09/04 17:27:15    Desc
Exhibit A    Page 27 of 63

# ARTICLE X.

## EFFECT OF CONFIRMATION

**10.1** **Vesting of Assets.**

(a) As of the Effective Date, the property of the Estate shall vest in the Liquidating Trust, and shall constitute the Liquidating Trust Assets.

(b) As of the Effective Date, all assets of the Debtor's estate shall be free and clear of all Claims and Liens, except as provided in the Plan or the Confirmation Order.

**10.2** **Release of Assets.** Until the Effective Date, the Bankruptcy Court shall retain jurisdiction of the Debtor and its assets and properties. Thereafter, jurisdiction of the Bankruptcy Court shall be limited to the subject matter set forth in Article XI hereof.

**10.3** **Binding Effect.** Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor and its respective successors and assigns, including, but not limited to, the Liquidating Trust and the Liquidating Trustee, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

**10.4** **Term of Injunctions or Stays.** Unless otherwise expressly provided herein, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Case.

**10.5** **Causes of Action.** Except as otherwise provided in the Plan, on and after the Effective Date, the Liquidating Trustee will have the exclusive right to enforce any and all Causes of Action against any person. The Liquidating Trustee may pursue, abandon, settle, or release any or all Causes of Action as it deems appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court. The Liquidating Trustee may, in its sole discretion, offset any such claim held against a person, against any payment due such person under the Plan,; *provided, however*, that any claims of the Debtor arising before the Commencement Date shall first be offset against Claims against the Debtor arising before the Commencement Date, subject in each instance, however, to the limitations of section 5.6 hereof with respect to Avoidance Actions.

**10.6** **Injunction.** On and after the Confirmation Date, all persons are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of or respecting any claim, debt, right, or cause of action of the Debtor for which the Liquidating Trustee retains sole and exclusive authority to pursue in accordance with the Plan.

**10.7** **Injunction Against Interference with Plan.** Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

Case 03-bk-01802    Doc 2594-1    Filed 07/09/04    Entered 07/09/04 17:27:15    Desc
Exhibit A    Page 28 of 63

**ARTICLE XI.**

**RETENTION OF JURISDICTION**

**11.1** **Jurisdiction of Bankruptcy Court.** The Bankruptcy Court shall retain jurisdiction of all matters arising under, arising out of, or related to the Chapter 11 Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a) To hear and determine motions for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b) To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date, including, without limitation, any proceeding to recover a Cause of Action;

(c) To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d) To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e) To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f) To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g) To hear and determine any issue or dispute arising under or related to the ISG Agreement; provided, however, such issue or dispute involves the Debtor;

(h) To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i) To hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

Case 03-01802   Doc 2594-1   Filed 07/09/04   Entered 07/09/04 17:27:15   Desc
Exhibit A   Page 29 of 63

(j)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Trust Agreement, and to hear and determine all matters involving or relating to the Liquidating Trust or the Liquidating Trustee.

(l)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(m)     To recover all assets of the Debtor and property of the Estate, wherever located, which jurisdiction shall not be limited as a result of the transfer of such assets and property to the Liquidating Trust pursuant to the Plan;

(n)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(o)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, matters with respect to any taxes payable by a trust or reserve established in furtherance of the Plan);

()     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code; and

(p)     To enter a final decree closing the Chapter 11 Case.

## ARTICLE XII.

## CRAMDOWN RESERVATION

**12.1     Nonconsensual Confirmation.**  If any impaired class votes to accept the Plan by the requisite statutory majorities provided in sections 1126(c) and 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Debtor reserves the right to undertake to have the Bankruptcy Court confirm the Plan under section 1129(c) of the Bankruptcy Code and/or amend the Plan in accordance with Section 13.10 hereof to the extent necessary to obtain entry of a confirmation order.

Case 03-bk-01802    Doc 2594-1    Filed 07/09/04    Entered 07/09/04 17:27:15    Desc
Exhibit A    Page 30 of 63

# ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

**13.1** **Dissolution of Creditors' Committee and Retirees' Committee.** The Creditors' Committee and the Retirees' Committee shall dissolve on the Effective Date.

**13.2** **Proof of Claim.** Consistent with Bankruptcy Rule 3003(c), the Debtor shall recognize a Proof of Claim timely filed by an Indenture Trustee in respect of the Claims of the holders of Notes, Bonds, Unsecured Notes or Unsecured Bonds issued pursuant the Secured Indentures or the Unsecured Indentures. Accordingly, any Claim filed by a registered or beneficial holder of a Note, Bond, Unsecured Note or Unsecured Bond may be disallowed, to the extent not previously disallowed, as duplicative of the Claim of the respective Indenture Trustee, without need for any further action or Bankruptcy Court order.

**13.3** **Record Date.** At the close if business on the Distribution Record Date, (i) the claims registers shall be closed, (ii) the transfer books and records as maintained by the Indenture Trustees or their respective agents shall be closed, and (iii) any transfer of a Claim arising under the Secured Indentures (subject, however, to the restrictions on transfer contained in the Settlement and Lockup Agreement) or the Unsecured Indentures shall be prohibited. The Debtor, J.P. Morgan (subject, however, to the restrictions contained in the Settlement and Lockup Agreement) and the Indenture Trustees to the Unsecured Indentures shall have no obligation to recognize any transfer of any such Claim occurring after the close of business on the Distribution Record Date.

**13.4** **Substantial Consummation.** On the Effective Date or as soon thereafter as practicable, but in no event, absent a waiver of Section 6(c) to the Settlement and Lockup Agreement by J.P Morgan, the Informal Committee and its members, later than September 30, 2004, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**13.5** **Exemption from Transfer Taxes.** Subject to orders entered by the Bankruptcy Court prior to the Confirmation Date authorizing certain sales of real property, pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.

**13.6** **Release of Authorized Agent and Former Officers and Directors of the Debtor.** In consideration of the efforts expended and to be expended by the Debtor's Authorized Agent and former officers and directors in conjunction with their operational and financial restructuring during the Chapter 11 Case, on the Effective Date, the Debtor will automatically release and will be deemed to release any and all claims (including any claims arising out of any alleged fiduciary or other duty) that it has or may have against the Authorized Agent and any of its officers and directors who held such positions after the Commencement Date in their capacities as such, arising or based upon any actions, conduct or omissions occurring after the Commencement Date and prior to the Effective Date, excluding willful misconduct and gross negligence. The Confirmation Order shall constitute an order approving the compromise, settlement and release of any and all such claims pursuant to section 1123(b)(3)(A) of the Bankruptcy Code.

The Plan shall not be construed as discharging, releasing, or relieving the Debtor or any other party, in any capacity, from any liability with respect to the Pension Plan under any law or regulatory

provision relating to the Pension Plan. PBGC and Pension Plan shall not be enjoined or precluded from enforcing such liability as a result of the Plan's provisions or confirmation.

*Each holder of a Claim (whether or not Allowed) against or Equity Interest in the Debtor that votes to accept the Plan shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover and shall be deemed to release any Claim against the Authorized Agent or such officers and directors prior to the Effective Date, excluding, however, willful misconduct and gross negligence.*

13.7    **Release of Other Third Parties.**  The Debtor has released J.P. Morgan, the Informal Committee, its members and each of their respective present or former directors, officers, employees, attorneys, accountants, investment bankers, financial advisors and agents pursuant to the Settlement and Lockup Agreement, which Settlement and Lockup Agreement is attached to the Plan as Exhibit 1 and incorporated herein by reference.  Upon the Effective Date, and conditioned upon the acceptance of the Plan by Class 2, such releases shall be extended to cover the period from the approval of the Settlement and Lockup Agreement through the Effective Date.

13.8    **Exculpation.**  Neither the Debtor, the Creditors' Committee, the Informal Committee, the Retirees' Committee, J.P. Morgan, the Indenture Trustees under the Unsecured Indentures nor any of their respective members, officers, directors, employees, advisors, professionals or agents, (collectively, "Exculpation Parties") shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of the Chapter 11 Case, negotiations regarding or concerning the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and, in all respects, the Exculpation Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

13.9    **Discharge of Claims and Termination of Equity Interests.**  Except as otherwise specifically provided herein or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims, and terminate all Equity Interests of any kind, nature or description whatsoever against or in the Debtor's Estate or any of its assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.  Except as otherwise provided herein or in the Confirmation Order, upon the Effective Date, all existing Claims against the Debtor's Estate and Equity Interests in the Debtor, shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Debtor's Estate, or any of its assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Equity Interest.

13.10    **Post-Confirmation Date Fees and Expenses.**

(a)    **Fees and Expenses of Professionals.**  The Liquidating Trustee shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses, incurred after the Effective Date, of the professional persons employed by the Debtor in connection with the implementation and consummation of the Plan, the claims reconciliation process, and any other matters as to which such professionals may be engaged.  The fees and expenses of such professionals shall be paid within ten (10) Business Days after submission of a detailed invoice therefor. If the Liquidating Trustee disputes the reasonableness of any such invoice, the Liquidating Trustee shall timely pay the undisputed portion of such invoice, and the Liquidating Trustee

Case 03-bk-01802    Doc 2594-1    Filed 07/09/04    Entered 07/09/04 17:27:15    Desc
Exhibit A    Page 32 of 63

or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice.

**13.11    Payment of Statutory Fees.**  On the Effective Date, and thereafter as may be required, the Liquidating Trustee shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

**13.12    Modification of Plan.**  The Plan may be amended, modified, or supplemented by the Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under the Plan, the Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan. Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, *provided* that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

**13.13    Revocation or Withdrawal of Plan.**  The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date.  If the Debtor takes such action, the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

**13.14    Courts of Competent Jurisdiction.**  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**13.15    Severability.**  If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.16    Governing Law.**  Except to the extent the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof.

**13.17    Exhibits.**  All exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

Case 03-bk-01802    Doc 2594-1    Filed 07/09/04    Entered 07/09/04 17:27:15    Desc
Exhibit A    Page 33 of 63

**13.18** **Successors and Assigns.** All the rights, benefits, and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such person.

**13.19** **Time.** In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**13.20** **Notices.** All notices, requests and demands to or upon the Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to Debtor:

Weirton Steel Corporation
400 Three Springs Drive
Weirton, WV 26062
Attention:      Robert C. Fletcher
Telephone:      304.797.2762
Facsimile:      304.797.2904

       and

McGuireWoods LLP
625 Liberty Avenue
Dominion Tower, 23rd Floor
Pittsburgh, PA 15222
Attention:      Mark E. Freedlander, Esq.
Telephone:      412.667.6000
Facsimile:      412.667.6050

If to the Creditors' Committee:

Blank Rome LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10017
Attention:      Marc E. Richards, Esq.
Telephone:      212.885.5231
Facsimile:      212.885.5001

If to J.P. Morgan:

Reed Smith, LLP
435 Sixth Avenue
Pittsburgh, PA 15219
Attention:      Eric P. Schaffer, Esq.
Telephone:      412.288.3131
Facsimile:      412.288.3063

If to the Informal Committee:

Akin Gump Strauss Hauer & Feld LLP
590 Madison Avenue
New York, NY 10022
Attention:     Lisa G. Beckerman, Esq.
Telephone:    212.872.1000
Facsimile:     212.872.1002


                                    Respectfully submitted,

Dated:  Weirton, West Virginia        WEIRTON STEEL CORPORATION
            July 9, 2004


                                    By:    /s/ Robert Fletcher
                                    Name:  Robert Fletcher
                                    Title:   Authorized Agent

# EXHIBITS

Exhibit 1        Settlement and Lockup Agreement

# **EXHIBIT 1**

Case 5:03-bk-01802   Doc 2594-1   Filed 07/09/04   Entered 07/09/04 17:27:15   Desc
Exhibit A   Page 37 of 63

## SETTLEMENT AND LOCK-UP AGREEMENT

This Settlement and Lock-Up Agreement (the "Agreement") is made and entered into as of May [____], 2004 by and among Weirton Steel Corporation ("Weirton"), Weirton Venture Holdings Corporation ("WVHC") and FW Holdings, Inc. ("FWH", collectively with Weirton and WVHC are the "Debtors"); J.P. Morgan Trust Company, National Association, in its capacity as indenture trustee and collateral agent ("J.P. Morgan"); the Informal Committee of Senior Secured Noteholders (the "Informal Committee"); and each of the individual members of the Informal Committee who are signatories hereto (the "Members", together with the Debtors, J.P. Morgan and the Informal Committee are the "Parties").

WHEREAS, the Debtors are subject to voluntary chapter 11 proceedings pending in the United States Bankruptcy Court for the Northern District of West Virginia (the "Bankruptcy Court"), as each of the Debtors filed a separate voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), which cases are jointly consolidated for administrative purposes at Case No. 5:03-BK-1802; and

WHEREAS, in 2001, (i) $110,066,000 of 11 3/8% senior notes due 2004 and $104,920,000 of 10 ¾% senior notes due 2005 were exchanged for $118,242,300 aggregate principal amount of 10% senior secured notes due 2008 (the "Notes") and (ii) $45,530,000 of 8 5/8% 1989 Pollution Control Bonds were exchanged for $27,348,000 aggregate principal amount of Secured Pollution Control Revenue Refunding Bonds (the "Bonds", collectively with the Notes are the "Senior Secured Notes", and the holders of the Notes and the Bonds shall be referred to collectively as the "Noteholders") and

WHEREAS, the Debtors obtained authority from the Bankruptcy Court, pursuant to that certain order dated April 22, 2004 (the "Sale Order"), to sell substantially all of their assets to ISG Weirton Inc. (the "Buyer"), a wholly-owned subsidiary of International Steel Group Inc., in accordance with that certain Amended and Restated Asset Purchase Agreement dated

February 25, 2004, and Amendment Nos. 1 and 2 thereto (collectively, the "Asset Purchase Agreement"); and

WHEREAS, the Sale Order contained a determination by the Bankruptcy Court that the value of the collateral securing the Senior Secured Notes is $20.4 million (the "Secured Claim"); and

WHEREAS, on April 23, 2004, J.P. Morgan, the Informal Committee and Corsair Special Situation Funds LP ("Corsair") each respectively filed a Notice of Appeal (the "Appeals") with respect to the Sale Order in the United States District Court for the Northern District of West Virginia (the "District Court") and on April 25, 2004, J. P. Morgan and the Informal Committee jointly filed with the Bankruptcy Court a motion to stay the effect of the Sale Order and Corsair separately filed a similar motion, which motions were denied by the Bankruptcy Court by order dated April 26, 2004; and

WHEREAS, on April 26, 2004 J.P. Morgan and the Informal Committee jointly filed a motion to stay the effect of the Sale Order with the District Court, and on April 27, 2004, Corsair filed a similar motion with the District Court, which motions the District Court scheduled for oral argument on April 30, 2004; and

WHEREAS, the Debtors have alleged that the grant of a stay by the District Court and the uncertainty of a closing date with the Buyer that may arise as a result of such stay could cause incalculable harm to the Debtors, their bankruptcy estates and the communities of interests; and

WHEREAS, the Debtors project that a closing of a sale (the date on which such sale shall be consummated shall be referred to herein as the "Closing Date") pursuant to the terms and conditions of the Asset Purchase Agreement as may be modified to effectuate this Agreement pursuant to Amendment No. 3 to the Asset Purchase Agreement as attached hereto and incorporated herein by reference as Exhibit "1", no earlier than on the morning of May 17, 2004 would permit the Debtors to file a confirmable plan of liquidation (which plan will include

2

Case 5:03-bk-01802    Doc 2594-1    Filed 07/09/04    Entered 07/09/04 17:27:15    Desc
Exhibit A    Page 39 of 63

the provisions set forth on Exhibit 2 hereto) and any amendments thereto consistent with this Agreement (the "Liquidating Plan"); and

WHEREAS, the Debtors, J.P. Morgan, the Informal Committee and the Members each desire to resolve the Appeals in order to allow the Debtors to close their bankruptcy proceedings as expeditiously as possible in accordance with the Liquidating Plan;

NOW, THEREFORE, in consideration of the premises and the material covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.    <u>SUPERPRIORITY ADMINISTRATIVE CLAIM OF J.P. MORGAN</u>.  In full and complete satisfaction of the superpriority claims asserted by J.P. Morgan against Weirton under sections 503(b) and 507(b) of the Bankruptcy Code and in accordance with the Final Order Authorizing Debtor to: (A) Incur Post-Petition Debt; And (B) Grant Certain Liens And Provide Security, Adequate Protection, And Other Relief to Fleet Capital Corporation, As Agent and J.P. Morgan Trust Company, National Association, As Indenture Trustee (the "Final DIP Order"), Weirton shall pay:

      (a)    (i) the unpaid fees and expenses incurred through the Closing Date of (a) J.P. Morgan and its counsel, (b) Compass Advisers, LLC, (c) Imperial Capital, LLC and Hatch Consulting, and (d) Akin Gump Strauss Hauer & Feld LLP; and (ii) to Ritchie Capital Management, LLC or any of its affiliates (collectively, "Ritchie") and Corsair Partners, LLC or any of its affiliates (collectively, "Corsair") for reimbursement of amounts expended by Ritchie and/or Corsair for (a) the fees and expenses paid to International Steel Associates, Inc., (b) fees and expenses paid to Post Advisory Group, LLC, (c) fees and expenses paid to Deutsche Bank Trust Company Americas and Deutsche Bank Securities, Inc., (d) fees and expenses paid in connection with the documentation of the $35 million unsecured loan commitment from certain holders of the Senior Secured Notes, (e) fees and expenses paid to Compass Advisors, LLC, and (f) the funding of the $1 million indemnification deposit held by J.P. Morgan, in no event, however, to exceed Nine Million Six Hundred Thousand Dollars ($9,600,000), at the time of closing ("Closing") under the Asset Purchase Agreement, which

\\FIN\202835.10

Case 5:03-bk-01802   Doc 2594-1   Filed 07/09/04   Entered 07/09/04 17:27:15   Desc
Exhibit A   Page 40 of 63

Closing shall not occur prior to 9:00 a.m. (EDT) on May 17, 2004;

    (b)    the excess, if any, of Nine Million Six Hundred Thousand Dollars ($9,600,000) over the amount paid pursuant to Section 1(a) hereof shall be paid at the Closing to the order of J.P. Morgan for the benefit of the holders of the Senior Secured Notes, including the Members;

    (c)    After payment by the Debtors of all allowed administrative priority claims of the Debtors' estates and after the Debtors have liquidated all of their remaining assets that are reasonably able to be liquidated, the lesser of (i) Six Million ($6,000,000) Dollars less 10% of the recovery by the Noteholders between $32 million and $36 million (the "Bonus Pool"), or (ii) all remaining assets in the Debtors' estates less the Bonus Pool, pursuant to the terms of the Liquidating Plan, shall be paid to the order of J.P. Morgan for the benefit of the holders of the Senior Secured Notes, including the Members. To the extent practical, the Debtors may make earlier distributions consistent with the needs of the Debtors' estates.

Amounts payable hereunder shall be in addition to the $20.4 million payable to J.P. Morgan under the Sale Order

    2.    <u>VOTING FOR THE PLAN OF LIQUIDATION</u>. So long as the Liquidating Plan contains treatment of J.P. Morgan, the Informal Committee and the Members consistent with the provisions of this Agreement:

    (a) each Member irrevocably agrees (i) to timely submit a ballot in voting their respective portion of the Secured Claim in favor of the Liquidating Plan filed by Weirton or the Debtors, and (ii) unless and until this Agreement has been terminated in accordance with section 6 hereof, not revoke or withdraw such vote;

    (b)    J.P. Morgan, the Informal Committee and each Member agrees that this Agreement and the terms and conditions hereunder may be disclosed in solicitation materials prepared in connection with the Liquidating Plan;

    (c)    J.P. Morgan, the Informal Committee and each Member shall from and after the date hereof, not agree to, consent to, provide support to, or participate in the formulation of or

4

vote for any plan of reorganization or liquidation other than the Liquidating Plan. The Informal Committee and each Member shall from and after the date hereof use their respective reasonable best efforts (at no cost to any of them) to take all actions in their reasonable discretion to achieve confirmation and consummation of the Liquidating Plan; and

(d)     J.P. Morgan, the Informal Committee and the Members agree that they shall not object to or otherwise commence any proceedings to oppose or alter any of the material terms of the Liquidating Plan or any document filed in furtherance of confirmation of the Liquidating Plan and shall not take any action that is materially inconsistent with or that would otherwise delay confirmation of the Liquidating Plan.

3.     RESTRICTIONS ON TRANSFER.  Commencing on the Effective Date, and so long as this Agreement remains in effect, each Member agrees that it shall not, without prior written consent of Weirton, (a) sell, transfer, assign, pledge, gift or otherwise dispose of its claims or Senior Secured Notes in whole or in part, unless the transferee thereof accepts such claims or Senior Secured Notes subject to the terms of this Agreement, as evidenced by an agreement executed by such transferee and delivered to Weirton prior to the transfer, that provides, among other things, that Weirton is an express third-party beneficiary of such agreement, or (b) grant any proxies in connection with its claims or Senior Secured Notes, deposit any of such claims or Senior Secured Notes into a voting trust, or enter into a voting or tendering agreement in each case with respect to any claim, unless such agreement or arrangement provides for compliance with this Agreement.  In the event that a Member transfers a claim or Senior Secured Note prior to the last date for voting on the Liquidating Plan, the transferee of such claim or Senior Secured Note shall comply with and be subject to all terms of this Agreement, including but not limited to, the obligation to vote in favor of the Liquidating Plan and shall, as a condition precedent to such transfer, execute an agreement with Weirton on terms substantially similar in all material respects to the terms of this Agreement.

5

Case 5:03-bk-01802     Doc 2594-1     Filed 07/09/04     Entered 07/09/04 17:27:15     Desc
Exhibit A     Page 42 of 63

4.    ACKNOWLEDGMENT.  This Agreement is not, and shall not be deemed to be, a solicitation of votes to accept the Liquidating Plan or offering of any securities to be issued under or in connection with the Liquidating Plan.

5.    LETTER OF DIRECTION.  Each of the Members agrees that it will execute and deliver to J.P. Morgan a letter of direction pursuant to which such Member shall direct J.P. Morgan, for the benefit of the Noteholders:

    (a)    to execute and deliver a copy of this Agreement;

    (b)    to support the Liquidating Plan;

    (c)    not to agree to, consent to, provide support to, or participate in the formulation of any plan of reorganization or liquidation other than the Liquidating Plan;

    (d)    not to object to or otherwise commence any proceedings to oppose or alter any of the material terms of the Liquidating Plan or any document filed in furtherance of the confirmation of the Liquidating Plan and not to take any action that is materially inconsistent with or that would otherwise delay confirmation of the Liquidating Plan;

    (e)    to take such other actions and to execute such other documents and agreements that J.P. Morgan shall determine, in the exercise of its sole discretion, to be necessary, advisable or convenient in connection with the confirmation and consummation of the Liquidating Plan; and

    (f)    to dismiss with prejudice the Appeals.

6.    TERMINATION OF AGREEMENT.  This Agreement shall terminate and all of the obligations of the Debtors, J.P. Morgan, the Informal Committee and the Members shall be of no further force or effect in the event that any of the following occurs (so long as the party seeking to enforce termination is in compliance with this Agreement):

    (a)    Weirton or the Debtors fail to file with the Bankruptcy Court the Liquidating Plan on or before June 7, 2004;

    (b)    the Bankruptcy Court fails to enter an order confirming the Liquidating Plan on or before  September 7, 2004;

    (c)    the Debtors do not "substantially consummate" (as the term is defined in section 1101(2) of the Bankruptcy Code) the Liquidating Plan on or before September 30, 2004;

\\FIN\202835.10

Case 5:03-bk-01802    Doc 2594-1    Filed 07/09/04    Entered 07/09/04 17:27:15    Desc
Exhibit A    Page 43 of 63

(d)     immediately, upon the conversion of Weirton's bankruptcy proceeding to a case under chapter 7 of the Bankruptcy Code, which conversion Weirton shall not seek voluntarily;

(e)     the appointment of a chapter 11 trustee pursuant to section 1104 of the Bankruptcy Code;

(f)     the Liquidating Plan fails to contain provisions consistent in all material respects with Exhibit 2;

(g)     any Party to this Agreement breaches or fails to comply with any covenants contained in this Agreement that are applicable to such Party;

(h)     any representation or warranty made by the Debtors to J.P. Morgan, the Informal Committee or the Members in connection with this Agreement is false or misleading in any material respect when made;

(i)     the Closing does not occur on or before June 1, 2004; or

(j)     the Debtors do not make the payments required at Closing in accordance with Section 1 hereunder.

7.     <u>REPRESENTATIONS AND WARRANTIES</u>.  Unless specified with particularity as to any specific Party, the Debtors, J.P. Morgan, the Informal Committee and the Members each severally, but not jointly, represents and warrants to each other that the following statements as applicable to it, are true, correct and complete as of the date hereof:

(a)     <u>Power and Authority</u>.  Each of the Debtors, J.P. Morgan, and each Member represents that, as of the date of this Agreement, each is duly organized, validly existing, and in good standing, and has all requisite corporate, partnership, limited liability company, or trust indenture power and authority to execute this Agreement and to carry out the transactions contemplated by, and perform its obligations under, this Agreement.

(b)     <u>Holdings</u>.  Each Member represents and warrants that, as of the date hereof, such Member either (i) is the beneficial owner of the principal amount of the Senior Secured Notes set forth below under its signature or (ii) has investment and voting discretion with respect to the principal amount set forth below under its signature and has power and authority to bind the beneficial owners of such Senior Secured Notes to the terms of this Agreement.

7

(c) <u>Not an Insider.</u> J.P. Morgan and each Member represents to each other Party hereto that it is not, as of the date hereof, and will not at any time on or prior to the effective date of the Liquidating Plan, become an "insider" of Weirton as such term is defined under section 101(31) of the Bankruptcy Code.

(d) <u>Binding Obligation</u>. This Agreement is the legally valid and binding obligation of it, enforceable against it in accordance with its terms.

(e) <u>No Conflicts</u>. The execution, delivery and performance of it by this Agreement does not and shall not (i) violate any provision of law, rule or regulation applicable to it or any of its subsidiaries or is certificate of incorporation or bylaws or other organizational documents or those of any of its subsidiaries, or (ii) conflict with, result in a breach of or constitute (with due notice or lapse of time, or both) a default under any material contractual obligation to which it or any of its subsidiaries is a party.

(f) <u>Financial Projections</u>. Weirton represents and warrants that all financial information and projections provided by Weirton to J.P. Morgan, the Informal Committee, the Members and/or any of their respective advisors (in connection with the determination by J.P. Morgan, the Informal Committee and the Members to accept the terms and conditions of this Agreement) are to the best knowledge, information and belief of Weirton accurate and correct in all material respects.

8. <u>AMENDMENTS AND WAIVERS.</u> This Agreement may not be modified, amended, or supplemented or any provision herein waived without the prior written consent of Weirton, J.P. Morgan, the Informal Committee and each of the Members. The Parties understand and agree that no failure or delay in exercising any right, power or privilege under this Agreement shall operate as a waiver thereof.

9. <u>GOVERNING LAW: JURISDICTION</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, and to the extent applicable, the Bankruptcy Code, each without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction. The Bankruptcy Court shall have original and exclusive jurisdiction over this Agreement and matters relating thereto or arising hereunder.

8

Case 5:03-bk-01802    Doc 2594-1    Filed 07/09/04    Entered 07/09/04 17:27:15    Desc
Exhibit A    Page 45 of 63

10.    REMEDIES.  It is understood and agreed by each of the parties to this Agreement that any breach of this Agreement would give rise to irreparable harm for which money damages would not be an adequate remedy and accordingly the parties agree that, in addition to any other remedies, each non-breaching party shall be entitled to specific performance and injunctive or other equitable relief for any such breach.

11.    HEADINGS.  The headings of title sections, paragraphs and subsections of this Agreement are inserted for convenience only and shall not affect the interpretation of this Agreement.

12.    SUCCESSORS AND ASSIGNS.  This Agreement is intended to bind and inure to the benefit of the Parties to this Agreement and their respective successors, assigns, heirs and representatives.

13.    ENTIRE AGREEMENT.  This Agreement constitutes the entire agreement of the Parties with respect to the subject matter of this Agreement, and supercedes all other prior negotiations, agreements and understandings, whether written or oral, among the parties with respect to the subject matter of this Agreement.

14.    COUNTERPARTS.   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one and the same Agreement.  Telecopies of signatures shall be binding and effective as originals.

15.    NO THIRD PARTY BENEFICIARIES.  Unless otherwise expressly stated herein, this Agreement shall be solely for the benefit of the parties and no other person or entity shall be a third party beneficiary of this Agreement.

16.    SEVERABILITY.  Any term or provision of this Agreement that is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceabilty without rendering invalid or unenforceable the remaining terms and provisions of this Agreement or affecting the validity or enforceability of any of the terms or

\\FIN\202835.10

provisions of this Agreement in any other jurisdiction.  If any provision of this Agreement is so broad as to be unenforceable, the provision shall be interpreted only so broad as is enforceable.

17.     FURTHER ASSURANCES.  Each of the Parties agree to execute and deliver, or to cause to be executed and delivered, all such instruments, and to take such action as the other Parties may reasonably request in order to effectuate the intent and purposes of, and to carry out the terms of this Agreement.

18.     WITHDRAWAL OF SUPPORT.  Upon termination of this Agreement, each of J.P. Morgan, the Informal Committee and the Members shall have no obligation hereunder, and in particular the Members shall have no obligation to vote their respective Secured Claims in favor of the Liquidating Plan, and any Member may move under Bankruptcy Rule 3018 to withdraw or change any vote cast for the Liquidating Plan, and Debtors agree that termination of this Agreement in accordance with section 6 hereunder shall constitute "cause" for such withdrawal or change under Bankruptcy Rule 3018.

19.     EFFECTIVENESS.  This Agreement shall be binding upon all Parties hereto upon receipt by counsel to Weirton of the executed signature pages of the Parties to this Agreement, provided, however, that this Agreement shall become effective on the date ("Effective Date") on which all of the following conditions are satisfied:

    (a)     approval of this Agreement by the Bankruptcy Court;

    (b)     approval of Amendment No. 3 to the Asset Purchase Agreement; and

    (c)     the execution of this Agreement on or before May 5, 2004 at 12:00 p.m. by the holders of at least $100,000,000 aggregate principal amount of the Senior Secured Notes.

20.     (a)  RELEASE BY J.P. MORGAN, THE INFORMAL COMMITTEE AND THE MEMBERS.  Effective upon (i) entry of a final order of the Bankruptcy Court approving this Agreement, (ii) payment of $20.4 million to J.P. Morgan pursuant to the Sale Order, and (iii) payment of the consideration in the amounts set forth at sections 1(a) and 1(b) hereof, and

10

Case 5:03-bk-01802    Doc 2594-1    Filed 07/09/04    Entered 07/09/04 17:27:15    Desc
Exhibit A    Page 47 of 63

in consideration of these payments to be made by the Debtors for the benefit of, among others, the Members, in accordance with this Agreement and the Sale Order, J.P. Morgan, the Informal Committee and each of the Members do hereby forever release and waive all claims, obligations, suits, judgments, demands, debts, rights, causes of action and liabilities (other than as specifically provided in this Agreement, the Sale Order and the Liquidating Plan, or any one or more of the foregoing), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking place on or prior to the consummation of the Liquidating Plan in any way relating to Weirton, the Debtors, and/or their bankruptcy cases, their bankruptcy estates that any such entity has or had or may have against Weirton, the Debtors, J. P. Morgan, and each of their respective present or former directors, officers, employees, attorneys, accountants, investment bankers, financial advisors and agents in any such capacity.

(b) <u>Cross-Release by Weirton and Debtors against J.P. Morgan, the Informal Committee and the Members</u>. Upon effectiveness of the release by J.P. Morgan, the Informal Committee and the Members under subsection 20(a) hereunder, and in consideration of the settlement of the claims of J.P. Morgan, the Informal Committee, and the Noteholders hereunder, the Debtors do hereby forever release and waive all claims (including, but not limited to any claim of Weirton for disgorgement or recharacterization of adequate protection payments made by Weirton to J.P. Morgan, its professionals, and the professionals retained by the Informal Committee in accordance with the Final DIP Order and the payments made hereunder), obligations, suits, judgments, demands, debts, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, forseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking into place on or prior to the consummation of the Liquidating Plan in any way

11

Case 5:03-bk-01802    Doc 2594-1    Filed 07/09/04    Entered 07/09/04 17:27:15    Desc
Exhibit A    Page 48 of 63

relating to Weirton, the Debtors, and/or their bankruptcy cases or their bankruptcy estates that the Debtors or their bankruptcy estates has or had or may have against J.P. Morgan, the Informal Committee, the Members, and each of their respective present or former directors, officers, employees, attorneys, accountants, investment bankers, financial advisors and agents in any such capacity.

21.     <u>Withdrawal of Appeals</u>.  Upon payment by the Debtors of $20.4 million pursuant to the Sale Order and the amounts required to be paid pursuant to sections 1(a) and 1(b) hereof, the Informal Committee, J.P. Morgan and Corsair shall take all necessary action to dismiss the Appeals (and all motions relating thereto) of the Sale Order with prejudice.

22.     <u>Reporting by the Debtors</u>.  Prior to the Closing, a subcommittee consisting of no more than three (3) Members (the "Subcommittee") and the Debtors shall agree upon the post-Closing reporting requirements of the Debtors.  Reporting requirements shall generally include information relating to expenditures during the winddown period, administrative claims status and revenue received by the Debtors' estates on a post-Closing basis.  Prior to the Closing, the Debtors and the Subcommittee shall agree to a 24 to 30 week static budget for the winddown period, excluding the projected fees and expenses of McGuireWoods LLP (the "Budget").  Following the Closing, on a weekly basis, the Debtors shall provide to the Subcommittee a rolling four week forecast measured against the Budget.  The Debtors shall meet and confer with the Subcommittee at reasonable times in order to discuss information reported by the Debtors.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

\\FIN\202835.10

IN WITNESS WHEREOF, each of the Parties hereto has caused this Agreement to be executed and delivered by its duly authorized officers as of the date first written above.

WEIRTON STEEL CORPORATION

By: _D. Leonard Wise_
Name: D. Leonard Wise
Title: CEO

WEIRTON VENTURE HOLDINGS CORPORATION

By: _Mark E. Kohn_
Name: Mark E. Kohn
Title: President

FW HOLDINGS, INC.

By: _Mark E. Kohn_
Name: Mark E. Kohn
Title: President

\\FIN\202835.10

Case 5:03-bk-01802    Doc 2594-1    Filed 07/09/04    Entered 07/09/04 17:27:15    Desc
Exhibit A    Page 50 of 63

**J.P. MORGAN TRUST COMPANY, NATIONAL ASSOCIATION**

By: _____

Name: Bridget M. Schessler

Title: Vice President


**INFORMAL COMMITTEE OF SENIOR SECURED NOTEHOLDERS**

By: _____

Name: _____

Title: _____

J.P. MORGAN TRUST COMPANY, NATIONAL
ASSOCIATION

By: _____
Name: _____
Title: _____


INFORMAL COMMITTEE OF SENIOR SECURED
NOTEHOLDERS

By: _____
Name: _Lisa G. Beckerman_____
Title: _Counsel_____

032671.0002 WEST 5510263 v1

14

NAME OF MEMBER:

By:
Name:    James R. Park
Title:    VP Ritchie Capital Management, LLC
         as Investment Advisor to Ritchie Distressed Opportunity
                                      Trading, Ltd

Principal Amount of Notes $ 25.2 Mil

Principal Amount of Bonds: $_____

033471.0002 WEST 5510263 v1                    15

**NAME OF MEMBER:**

By: ~~WILFRID AUBREY LLC~~

Name: ~~NICHOLAS W. WALKIT~~

Title: ~~PRINCIPAL~~

Principal Amount of Notes $ _____

Principal Amount of Bonds: $ *5,722,000*

Case 5:03-bk-01802   Doc 2594-1   Filed 07/09/04   Entered 07/09/04 17:27:15   Desc
Exhibit A    Page 54 of 63

NAME OF MEMBER:

*Caracul*

*BNP European High Yield Fund*

By: _____

Name: _Louis Largeau_

Title: _Director_

Principal Amount of Notes $ _33,459,000_

Principal Amount of Bonds: $_____

**NAME OF MEMBER:**

_Corsair Special Situations Fund, L.P._

By: _Ronald S. Buck_
Name: _Ronald S. Buck_
Title: _Managing Member, Corsair Holdings, LLC,_
_General Partner of Corsair Special Situations Fund, L.P._

Principal Amount of Notes $ _29,039,700.00_

Principal Amount of Bonds: $_____

Case 5:03-bk-01802    Doc 2594-1    Filed 07/09/04    Entered 07/09/04 17:27:15    Desc
Exhibit A    Page 56 of 63

NAME OF MEMBER:

DELAWARE INVESTMENTS GLOBAL DIVIDEND AND
INCOME FUND, INC.

By: _____
Name: Patrick P. Coyne
Title:  EVP, Managing Director/Chief Investment Officer, Fixed
        Income

Principal Amount of Notes $522,500.00

Principal Amount of Bonds: $0.00

NAME OF MEMBER:

ADMIRAL CBO (CAYMAN) LTD.

By: Delaware Investment Advisers, a Series of Delaware
Management Business Trust, its Manager

By:
Name: Patrick P. Coyne
Title: EVP, Managing Director/Chief Investment Officer, Fixed
Income

Principal Amount of Notes $2,337,500.00

Principal Amount of Bonds: $0.00

Case 5:03-bk-01802    Doc 2594-1    Filed 07/09/04    Entered 07/09/04 17:27:15    Desc
Exhibit A    Page 58 of 63

NAME OF MEMBER:

HYPPCO FINANCE COMPANY LTD.

By: Delaware Investment Advisers, a Series of Delaware
Management Business Trust, its Manager

By: _____
Name: Patrick P. Coyne
Title:  EVP, Managing Director/Chief Investment Officer, Fixed
Income

Principal Amount of Notes $1,650,000.00

Principal Amount of Bonds: $0.00

Case 5:03-bk-01802    Doc 2594-1    Filed 07/09/04    Entered 07/09/04 17:27:15    Desc
Exhibit A    Page 59 of 63

NAME OF MEMBER:

CHYPS CBO 1999-1 LTD.

By: Delaware Investment Advisers, a Series of Delaware
Management Business Trust, its Manager

By: _____

Name: Patrick P. Coyne

Title:  EVP, Managing Director/Chief Investment Officer, Fixed
Income

Principal Amount of Notes $2,750,000.00

Principal Amount of Bonds: $0.00

032671.0003 WEST 5510363 v1                         15

NAME OF MEMBER:

ATLANTIC GLOBAL FUNDING CBO, LIMITED

By: Delaware Investment Advisers, a Series of Delaware Management Business Trust, its Manager

By: _____

Name: Patrick P. Coyne

Title: EVP, Managing Director/Chief Investment Officer, Fixed Income

Principal Amount of Notes $2,200,000.00

Principal Amount of Bonds: $0.00

Case 5:03-bk-01802   Doc 2594-1   Filed 07/09/04   Entered 07/09/04 17:27:15   Desc
Exhibit A   Page 61 of 63

**NAME OF MEMBER:**

By: Greylock Meadow Fund LP
Name: Michael H. Stalker
Title: Senior Portfolio Manager

Principal Amount of Notes: $ 1,100,000.00

Principal Amount of Bonds: $_____

053671.0002 WEST 5510263 v1

No.1512   P. 3

May. 5. 2004 9:13AM

## EXHIBIT 2

The Liquidating Plan (as defined in the Agreement) shall contain, *inter alia,* the treatment described in section 1 of the Agreement (and shall be consistent with the Agreement) and provisions consistent in form and substance with the following provisions of the Debtor's First Amended Plan of Reorganization Dated November 13, 2003, and any definitions used in any such provisions:

(a)     final paragraph of section 4.5, entitled "Cancellation of Secured 2002 Exchange Notes, Secured Pollution Control Bonds and Related Instruments";

(b)     subsections (A), (B), (C), (D) and (N) of section 5.2

(c)     section 7.2;

(d)     section 7.10;

(e)     section 9.5;

(f)     section 9.6;

(g)     section 12.2;

(h)     section 12.3;

(i)     section 12.10; and

(j)     section 12.21.

• The Liquidating Plan shall attach this Agreement and incorporate this Agreement therein by reference.

• The Liquidating Plan will provide for the distribution of the proceeds of the Bonus Pool to those agents or employees of the Debtors participating in the winddown of the Debtors' estates.