IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | Bankruptcy No. 5:03-BK-1802 |
| ) | |
| WEIRTON STEEL CORPORATION, ) | Chapter 11 |
| ) | |
| Debtor. ) | Honorable L. Edward Friend, II |
| ) | United States Bankruptcy Judge |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
UNDER SECTIONS 1129(a) AND (b) OF THE BANKRUPTCY CODE AND
RULE 3020 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
<u>CONFIRMING DEBTOR'S PLAN OF LIQUIDATION</u>**

WHEREAS, Weirton Steel Corporation ("Weirton" or the "Debtor"), as debtor and debtor-in-possession (the "Chapter 11 Case") and the "proponent of the plan" within the meaning of section 1129 of title 11, United States Code (the "Bankruptcy Code"), filed the Debtor's Plan of Liquidation under chapter 11 of the Bankruptcy Code dated June 7, 2004 and modified on July 9, 2004 (such plan, as transmitted to parties in interest being the "First Amended Plan" and subsequently amended on August 23, 2004, the "Plan")[1] and the Disclosure Statement for Debtor's Plan of Liquidation, dated July 9, 2004 (as transmitted to parties in interest, the "Disclosure Statement"); and

WHEREAS, on July 9, 2004, the Bankruptcy Court entered an order (the "Solicitation Order") which, among other things, (a) approved the Disclosure Statement under section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (b) established August 24, 2004 as the date for the hearing to consider confirmation of the Plan (the "Confirmation Hearing"), (c) approved the form and method of notice of the Confirmation Hearing (the "Confirmation Hearing Notice"),

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan, a copy of which is annexed hereto as Exhibit "A". Any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

and (d) established certain procedures for soliciting and tabulating votes with respect to the First Amended Plan; and

WHEREAS, the Confirmation Hearing Notice (i) and as to holders of Claims in Classes 2, 3 and 4 entitled to vote, the Disclosure Statement, the First Amended Plan, the Solicitation Order, and a ballot and return envelope (such ballot and envelope being referred to as a "Ballot"); and (ii) as to holders of Claims in Class 1 and Interests in Class 5, were transmitted as set forth in the Affidavit of Mailing by Donlin Recano sworn to on July 20, 2004 evidencing the timely service of the First Amended Plan, Disclosure Statement, related solicitation materials, and such service is adequate as provided by Bankruptcy Rule 3017(d); and

WHEREAS, on August 23, 2004, the Debtor filed the Plan Supplement with respect to the Plan comprised of the Liquidation Trust Agreement; and

WHEREAS, the Debtors filed the Affidavit of Donlin Recano Regarding the Tabulation of and Results of Voting with Respect to the Disclosure Statement for Debtor's Plan of Liquidation, sworn to on August 23, 2004 (the "Voting Report"), attesting and certifying the method and results of the ballot tabulation for the impaired Classes of Claims (Classes 2, 3 and 4) entitled to vote to accept or reject the Plan; and

WHEREAS, the West Virginia Department of Environmental Protection (the "WVDEP"), the United States Department of Justice Environmental and Natural Resources Division (the "DOJ"), the West Virginia Workers Compensation Commission (the "Commission") and United Bank timely filed and served objections to the Plan (the "Objections"); and

WHEREAS, four Objections have been withdrawn or resolved on the terms and conditions described on the record of the Confirmation Hearing and in accordance with the Second Amendment to the Plan (collectively, the "Resolved Objections"), or the Objections are overruled on the merits pursuant to this Confirmation Order; and

WHEREAS, the Confirmation Hearing was held on August 24, 2004.

NOW, THEREFORE, based upon the Voting Report, the Affidavit of Mailing, and the Publication Certificate, and upon (a) all the evidence proffered or adduced at, and Objections filed in connection with, and arguments of counsel made at the Confirmation Hearing, and (b) the entire record of this Chapter 11 Case, and after due deliberation thereon and good cause appearing therefor:

FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

1. <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>. This Bankruptcy Court has jurisdiction over the Chapter 11 Case pursuant to sections 157 and 1334 of title 28 of the United States Code. Venue is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

2. <u>Judicial Notice</u>. This Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Bankruptcy Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Case, including, but not limited to, the hearing to consider the adequacy of the Disclosure Statement.

3. <u>Burden of Proof</u>. The Debtor has the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of evidence.

---

[2] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

4. <u>Transmittal and Mailing of Materials; Notice</u>. The Disclosure Statement, the First Amended Plan, the Ballots, the Solicitation Order, and the Confirmation Hearing Notice, which were transmitted and served as set forth in the Affidavit of Mailing, shall be deemed to have been transmitted and served in compliance with the Solicitation Order and the Bankruptcy Rules, and such transmittal and service were adequate and sufficient, and no other or further notice is or shall be required.

5. <u>Voting</u>. Votes to accept and reject the Plan have been solicited and tabulated by Donlin Recano fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Order, and industry practice.

6. <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)</u>. The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(a) <u>Proper Classification (11 U.S.C. § 1122, 1123(a)(1))</u>. In addition to Administrative Expense Claims and Priority Tax Claims, which need not be classified the Plan designates five Classes of Claims and Equity Interests. Each Other Secured Claim shall be deemed to be separately classified in a subclass of Class 1 and shall have all rights associated with separate classification under the Bankruptcy Code. The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests. The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b) <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. Article III of the Plan specifies that Class 1 is unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c) <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Articles III and IV of the Plan designate Classes 2, 3, 4 and 5 as impaired and specify the treatment of Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d) <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment by the Debtor for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest in each respective Class under the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e) <u>Implementation of Plan (11 U.S.C. § 1123(a)(5)</u>. The Plan and the Plan Supplement provide adequate and proper means for the Plan's implementation, including the establishment of the Liquidating Trust, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(f) <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>. Section 6.5 of the Plan provides for the dissolution of the Debtor after the Debtor's completion of the acts required by the Plan, and therefore, section 1123(a)(6) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

(g) <u>Designation of Directors (11 U.S.C. § 1123(a)(7))</u>. Section 6.5 of the Plan provides for the dissolution of the Debtor, after the Debtor's completion of the acts required by the Plan, and therefore, section 1123(a)(7) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

(h) <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>. The Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

(i) <u>Bankruptcy Rule 3016(a)</u>. The Plan is dated and identifies the entity submitting it as the proponent, thereby satisfying Bankruptcy Rule 3016(a).

7. <u>Debtor's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtor has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

    a.    The Debtor is a proper debtor under section 109 of the Bankruptcy Code

    b.    The Debtor has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court.

    c.    The Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order in transmitting the First Amended Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating votes on the First Amended Plan.

8. <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtor's good faith is evident from the facts and records of this Chapter 11 Case, the Settlement and Lock-Up Agreement and the hearing thereon, the Disclosure Statement and the hearing thereon, and the record of the Confirmation Hearing and other proceedings held in this Chapter 11 Case. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtor's estate and to effectuate an orderly liquidation of the Debtor.

9. <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payment made or to be made by the Debtor for services or for costs and expenses in or in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been approved by, or its subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

10. <u>Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtor has complied with section 1129(a)(5) of the Bankruptcy Code. Section 6.5 of the Plan provides for the dissolution of the Debtor after the Debtor's completion of the acts required by the Plan and,

therefore, there will be no "reorganized debtor" for any presently existing officer or director to serve.

11. <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. Section 6.5 of the Plan provides for the dissolution of the Debtor after the Debtor's completion of the acts required by the Plan. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in this Chapter 11 Case.

12. <u>Best Interests of Creditors (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The Disclosure Statement, the Plan, the Plan Supplement, and other evidence proffered or adduced at the Confirmation Hearing (a) are persuasive and credible, (b) have not been controverted by other evidence, and (c) establish that each holder of an impaired Claim or Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date.

13. <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. Note and Bond Claims in Class 2, Priority Non-Tax Claims in Class 3, and General Unsecured Claims in Class 4 have voted to accept the Plan in accordance with sections 1126(c) and (d) of the Bankruptcy Code. Equity Interests in Class 5 are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Although section 1129(a)(8) has not been satisfied with respect to the deemed rejecting Class 5, the Plan is confirmable because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to Class 5.

14. <u>Treatment of Administrative and Tax Claims (11 U.S.C. § 1129(a)(9))</u>. The treatment of Administrative Expense Claims and Priority Non-Tax Claims pursuant to Article II of the Plan satisfies the requirements of sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims pursuant to Section 2.4 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

15. <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))</u>. At least one Class of Claims against the Debtors that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider, thus satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

16. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The evidence proffered or adduced at the Confirmation Hearing (a) is persuasive and credible, (b) has not been controverted by other evidence, and (c) establishes that the Plan is workable and has a reasonable likelihood of success, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

17. <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. All fees payable under section 1930 of title 28, United States Code, as determined by the Bankruptcy Court, have been paid or will be paid pursuant to Section 2.3 of the Plan. Pursuant to Section 2.3 of the Plan, after the Effective Date, such fees shall continue to be paid. Thus, Section 2.3 of the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

18. <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. By orders dated March 15, 2004, the Bankruptcy Court authorized the Debtor to terminate the Retiree Benefits. Pursuant to these orders, the Debtor (i) terminated the Retiree Benefits as of April 1, 2004, (ii) paid no claims for medical services incurred by Retirees subsequent to April 1, 2004, (iii) did not collect contributions for coverage under programs, other than pursuant to the continuation coverage requirements under Section 4980B of the Tax Code and Part 6 of Subtitle B of Title I of ERISA ("COBRA"), applicable to the Retirees for the period subsequent to March 31, 2004, (iv) other than as required by law, made no life insurance payments on behalf of any Retiree who died subsequent to April 1, 2004, (v) paid no amounts on account of Retiree Benefits claims submitted to the appropriate insurance administrator subsequent to May 15, 2004, and (vi) after May 17, 2004, terminated all benefit programs providing the Retiree Benefits. Upon the termination of retiree medical benefits by the Debtor, certain affected individuals became eligible

to continue retiree health care through COBRA coverage. Thus, the requirements of section 1129(a)(13) of the Bankruptcy Code are satisfied.

19. <u>Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b))</u>. Class 5 is deemed to reject the Plan. Based upon the Disclosure Statement, and the evidence proffered, adduced, or presented by the Debtor at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to Class 5, as required by section 1129(b)(1) of the Bankruptcy Code. Thus, the Plan may be confirmed notwithstanding the Debtor's failure to satisfy section 1129(a)(8) of the Bankruptcy Code. Upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of Class 5.

20. <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

21. <u>Modifications to the Plan</u>. The modifications to the First Amended Plan constitute technical changes and do not materially adversely affect or change the treatment of any Claims or Equity Interests. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

22. <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record before the Bankruptcy Court in this Chapter 11 Case, the Debtor, and its directors, officers, employees, members, agents, advisors and professionals have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section

1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 13.8 of the Plan.

23. <u>Assumption and Rejection</u>. Article VIII of the Plan governing the assumption and rejection of executory contracts and unexpired leases satisfies the requirements of sections 365(b) of the Bankruptcy Code.

24. <u>Liquidating Trust</u>. The establishment of the Liquidating Trust and appointment of the Liquidating Trustee (the "Trustee") in accordance with the Liquidating Trust Agreement is approved.

25. <u>Satisfaction of Confirmation Requirements</u>. The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

26. <u>Retention of Jurisdiction</u>. The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

## DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

27. <u>Modifications to the Plan</u>. The modifications of the First Amended Plan, which are incorporated in the Plan, meet the requirements of sections 1127(a) and (c), such modifications do not adversely change the treatment of the Claim of any creditor or Equity Interest of any equity security holder within the meaning of Bankruptcy Rule 3019, and no further solicitation or voting is required.

28. <u>Confirmation</u>. The Plan is approved and confirmed under section 1129 of the Bankruptcy Code. The terms of the Plan and the Plan Supplement are incorporated by reference into and are an integral part of the Plan and this Confirmation Order.

29. <u>Objections</u>. All Objections that have not been withdrawn, waived or settled, and all reservations of rights pertaining to confirmation of the Plan included therein, are overruled on the merits for the reasons stated on the record of the Confirmation Hearing.

30. <u>Plan Classification Controlling</u>. The classifications of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the Debtor's creditors in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes, and (c) shall not be binding on the Debtor.

31. <u>Binding Effect</u>. The Plan and its provisions shall be binding upon the Debtor, the Trustee, any entity acquiring or receiving property or a distribution under the Plan, and any holder of a Claim against or Equity Interest in the Debtor, including all governmental entities, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder or equity has accepted the Plan.

32. <u>Vesting of Assets</u>. Pursuant to Section 6.1(c) of the Plan, except as otherwise provided in the Plan, upon the Effective Date all property of the Debtor's estate shall vest in the Liquidating Trust, the Liquidating Trust Assets shall be transferred to the Liquidating Trust. From and after the Effective Date, the Trustee may dispose of the Liquidating Trust Assets free of any restrictions of the Bankruptcy Code, but in accordance with the provisions of the Plan and the Liquidating Trust Agreement. As of the Effective Date, all assets of the Debtor and the Liquidating Trust shall be free and clear of all Claims, except as provided in the Plan or this Confirmation Order.

33. <u>Assumption or Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))</u>. Pursuant to Section 8.1 of the Plan, as of the Effective Date, all executory contracts and unexpired leases as to which the Debtor is a party are rejected, except for an executory contract or unexpired lease that (i) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court entered prior to the Effective Date, or (ii) is the subject of a

separate motion to assume or reject filed under section 365 of the Bankruptcy Code by the Debtor prior to the Effective Date.

34. <u>Bar Date for Rejection Damage Claims</u>. Pursuant to Section 8.3 of the Plan, if the rejection of an executory contract or unexpired lease by the Debtor, pursuant to Section 8.1 of the Plan, results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtor, the Trustee, or any property to be distributed under the Plan or the Liquidating Trust unless a proof of claim is filed with the Bankruptcy Court and served upon the Trustee on or before the date that is thirty (30) days after the Confirmation Date.

35. <u>General Authorizations</u>. The Debtor and the Trustee are authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan. The Debtor, its Authorized Agent, the Trustee and their respective attorneys are authorized and empowered to issue, execute, deliver, file, or record any agreement, document, or security, including, without limitation, the documents contained in the Plan Supplement, as modified, amended, and supplemented, in substantially the form included therein, and to take any action necessary or appropriate to implement, effectuate and consummate the Plan in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Plan, including any release, amendment, or restatement of any organization documents of the Debtor, whether or not specifically referred to in the Plan or the Plan Supplement, without further order of the Court, and any or all such documents shall be accepted by each of the respective state filling officers and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provision of state law. Pursuant to Section 6.8 of the Plan, the Debtor is authorized to file certificates of cancellation, dissolution, or merger without further action under applicable law,

regulation, order, or rule, including, without express or implied limitation, any action by the stockholders, members, or directors (or other governing body) of the Debtor. In consideration of the Debtor and WVDEP agreeing in principle to the resolution of issues relating to the Shiloh Landfill, the Debtor or the Trustee (as the case may be) shall hold $250,000 in escrow pending approval by the Court of a motion to approve settlement between the Debtor and WVDEP.

36. <u>Securities Law Exemption</u>. The offering, issuance and distribution of the beneficial interests in the Liquidating Trust are exempt from the provisions of section 5 of the Securities Act of 1933, as amended, and any state or local law requiring registration for the offer, issuance, distribution, or sale of a security by reason of section 1145(a) of the Bankruptcy Code. The beneficial interests in the Liquidating Trust shall not be certificated and are not transferable (except as otherwise provided in the Liquidating Trust Agreement).

37. <u>Plan Supplement</u>. The documents contained in the Plan Supplement and any amendments, modifications, and supplements thereto, and the execution, deliver and performance thereof by the Debtor or the Trustee is authorized and approved, including, but not limited to, the Liquidating Trust Agreement. Without need for further order or authorization of the Bankruptcy Court, the Debtor and the Trustee are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan Supplement that do not materially modify the terms of such documents and are consistent with the Plan.

38. <u>Governmental Approvals Not Required</u>. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement and any documents, instruments, or agreements, and any amendments or modifications thereto.

39. <u>Exemption from Certain Taxes</u>. Pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of an deed or other

instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by the Plan (including transfers of assets to and by the Liquidating Trust) shall not be subject to any stamp, real estate transfer, mortgage, recording, sales, use or other similar tax.

40. <u>Effective Date Payments and Transfers by the Debtor</u>. Pursuant to Section 5.2 of the Plan, on the Effective Date, or as soon thereafter as is reasonably practicable, the Debtor or the Trustee shall (i) remit to holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and, if applicable, Allowed Other Secured Claims an amount in Cash equal to the Allowed amount of such Claims, and (ii) transfer the Liquidating Trust Assets free and clear of all liens, claims, and encumbrances to the Liquidating Trust, but subject to any objections imposed by the Plan.

41. <u>Role of the Trustee</u>. The Trustee shall (a) have the power and authority to hold, manage, sell, and distribute the Liquidating Trust Assets, (b) hold the Liquidating Trust Assets for the benefit of the beneficial interests of the Liquidating Trust, (c) have the power and authority to hold, manage, sell, and distribute Cash or non-Cash Liquidating Trust Assets obtained through the exercise of his power and authority, (d) have the power and authority to prosecute and resole objections to Disputed Claims, (e) have the power and authority to perform such other functions as are provided in the Plan and/or the Liquidating Trust Agreement, and (f) have the power and authority to administer the closure of the Chapter 11 Case. After the certificates of cancellation or dissolution for the Debtor have been filed in accordance with Section 6.5 of the Plan, the Trustee shall be authorized to exercise all powers regarding the Debtor's tax matters, including filing tax returns, to the same extent as if the Trustee were the debtor in possession. The Trustee shall (a) complete and file as soon as possible, to the extent not previously filed, the Debtor's final federal, state, and local tax returns, (b) request an expedited determination of any unpaid tax liability of the Debtor under section 505(b) of the

Bankruptcy Code for all tax periods of the Debtor ending after the Commencement Date through the liquidation of the Debtor as determined under applicable tax laws, to the extent not previously requested, and (c) represent the interest and account of the Debtor before any taxing authority in all matters, including but not limited to, any action, suit, proceeding, or audit.

42. <u>Books and Records</u>. On the Effective Date, the Debtor shall transfer and assign to the Liquidating Trust full title to, and in accordance with section 6.7 of the Plan, the Liquidating Trust shall be authorized to take possession and/or dispose of, all the books and records of the Debtor that were not transferred to ISG.

43. <u>Costs and Expenses of the Trustee</u>. The costs and expenses of the Liquidating Trust, including the fees and expenses of the Trustee and his retained professionals shall be paid in accordance with Sections 6.1(h) and (i) of the Plan from the Liquidating Trust Assets. Such costs and expenses shall be considered administrative expenses of the Debtor's estate.

44. <u>Causes of Action</u>. Pursuant to Section 10.5 of the Plan, on and after the Effective Date, the Trustee will have the exclusive right to enforce any and all Causes of Action against any person. The Trustee may pursue, abandon, settle, or release any or all Causes of Action, as it deems appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court. The Trustee may pursue, abandon, settle, or release any or all Causes of Action as it deems appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court.

45. <u>Final Fee Applications</u>. Pursuant to Section 2.2 of the Plan, all entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred (the "Final Fee Applications") by the date that is thirty (30) days after the Confirmation Date, and (ii) shall be paid in full in such amounts as are allowed by

the Bankruptcy Court (a) upon the date upon which the order relating to any such Administrative Expense Claim is entered, or b) upon such other terms as may be mutually agreed upon between the holder of such an Administrative Expense Claim and the Debtors. Notwithstanding the foregoing, FTI Consulting, Inc. ("FTI") shall be paid a value added fee of $500,000 (the "FTI Fee") pursuant to section 3 of the FTI retention agreement dated April 8, 2003 previously approved by this Court; provided, however, that the FTI Fee shall be paid only in the event that sufficient funds exist in the Debtor's estate or the Liquidating Trust (as the case may be) to pay such fee following distribution of the entire amount of the Allowed Claims of Class 2 to J.P. Morgan pursuant to Section 4.2 of the Plan.

46. The Debtor is authorized to pay in the ordinary course and without the need for Bankruptcy Court approval the reasonable fees and expenses, incurred after the Confirmation Date, of the professional persons employed by the Debtor in connection with the implementation and consummation of the Plan, the claims reconciliation process, and any other matters as to which such professionals may be engaged. After the Effective Date, the Trustee shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the professional persons employed by the Liquidating Trust in connection with the implementation and consummation of the Plan, the claims reconciliation process, and any other matters as to which such professionals may be engaged. The fees and expenses of such professionals shall be paid in accordance with Section 13.10 of the Plan. Provided that the entire amount of the Allowed Claims of Class 2 are fully paid to J.P. Morgan pursuant to Section 4.2 of the Plan, Robert Fletcher shall be paid a Trustee retention fee of $250,000 upon transfer of the Liquidating Trust Assets from the Debtor's estate to the Liquidating Trust.

47. <u>Injunction</u>. Pursuant to Section 10.6 of the Plan, unless specifically otherwise provided in the Plan, on and after the Confirmation Date, all persons are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly,

indirectly, derivatively, or otherwise) on account of or respecting any claim, debt, right, or cause of action of the Debtor for which the Debtor or the Liquidating Trust retains sole and exclusive authority to pursue in accordance with the Plan.

48. <u>Releases, Exculpations and Injunctions</u>. The release, exculpation, and injunction provisions contained in the Plan are fair and equitable, are given for valuation consideration, and are in the best interests of the Debtor, and its chapter 11 estates, and such provisions shall be effective and binding upon all persons and entities.

49. <u>Termination of Injunctions and Automatic Stay</u>. Pursuant to Section 10.4 of the Plan, all injunctions or stays arising under or entered during the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Case.

50. <u>Cancellation of Existing Securities and Agreements</u>. Pursuant to Section 6.5 of the Plan, except for purposes of evidencing a right to distributions under the Plan or otherwise provided in the Plan, on the Effective Date all the agreements and other documents evidencing the Claims or rights of any holder of a Claim against the Debtor, including all indentures and notes evidencing such Claims and any options or warrants to purchase Equity Interests, or obligating the Debtor to issue, transfer, or sell Equity Interests or any other capital stock of the Debtor, shall be cancelled; *provided, however,* that the Indentures shall continue in effect solely to the extent set forth in Sections 4.2, 4.4 or 5.2 of the Plan.

51. <u>Distribution of ESOP Investments</u>. On the Effective Date, United Bank, Inc., the trustee of the Weirton Steel Corporation 1984 Employee Stock Ownership Plan (the "1984 ESOP") is (i) authorized to distribute to the 1984 ESOP participants and their beneficiaries all invested proceeds held in Diversification Accounts or Investment Funds (as each of "Diversification Accounts" and "Investments Funds" are defined under the 1984 ESOP), (ii) relived of and from any further obligation, responsibility or liability with respect to the 1984

ESOP, and (iii) authorized to pay earned but unpaid trustee fees from the proceeds of the 1984 ESOP plan trust.

On the Effective Date, United Bank, Inc., the trustee of the Weirton Steel Corporation 1989 Employee Stock Ownership Plan (the "1989 ESOP") is authorized to distribute to the 1989 ESOP participants and their beneficiaries any proceeds of Diversification Accounts or Investment Funds (as each of "Diversification Accounts" and "Investment Funds" are defined under the 1989 ESOP), and (ii) relieved of and from any further obligation, responsibility or liability with respect to the 1989 ESOP.

52. Nonoccurrence of Effective Date. In the event that the Effective Date does not occur, the (i) the Plan, (ii) the rejection of executory contracts or unexpired leases pursuant to the Plan, (iii) any document or agreement executed pursuant to the Plan, and (iv) any actions, releases, waivers, or injunctions authorized by this Confirmation Order or any order in aid of consummation of the Plan shall be deemed null and void. In such event, nothing contained in this Confirmation Order, any order in aid of consummation of the Plan, or the Plan, and no acts taken in preparation for consummation of the Plan (a) shall be deemed to constitute a waiver or release of any Claims or Equity Interests by or against the Debtor or any other persons or entities, to prejudice in any manner the rights of the Debtor or any person or entity in any further proceedings involving the Debtor or otherwise, or to constitute an admission of any sort by the Debtor or any other persons or entities as to any issue, or (b) shall be construed as a finding of fact or conclusion of law in respect thereof.

53. Notice of Entry of Confirmation Order. On or before the tenth (10th) Business Day following the date of entry of this Confirmation Order, the Debtor shall serve notice of entry of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c) on all creditors and interest holders, the United States Trustee, and other parties in interest, by causing notice of entry of the Confirmation Order (the "Notice of Confirmation"), to be delivered

to such parties by first-class mail, postage prepaid. The notice described herein is adequate under the particular circumstances and no other or further notice is necessary.

54. <u>Notice of Effective Date</u>. Within five (5) Business Days following the occurrence of the Effective Date, the Trustee shall file the notice of the occurrence of the Effective Date with the Bankruptcy Court.

55. <u>Binding Effect</u>. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan and the Plan Supplement shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

56. <u>Severability</u>. Each term and provision of the Plan, as it may have been altered or interpreted by the Bankruptcy Court in accordance with Section 13.15 of the Plan, is a valid and enforceable pursuant to its terms.

57. <u>Conflicts Between Order and Plan</u>. To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and conditions contained in this Confirmation Order shall govern. The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further order of this Bankruptcy Court.

Dated: Weirton, West Virginia
August 24, 2004

_____
United States Bankruptcy Judge

\\FIN\214850.1