UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: | Bankruptcy No. 5:03-BK-01802 |
| WEIRTON STEEL CORPORATION, | Chapter 11 |
| Debtor. | Honorable L. Edward Friend, II<br>United States Bankruptcy Judge |

## MOTION OF WEIRTON STEEL CORPORATION
## FOR ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES
## OF BANKRUPTCY PROCEDURE APPROVING COMPROMISE AND
## SETTLEMENT WITH THE PENSION BENEFIT GUARANTY CORPORATION

Weirton Steel Corporation ("Weirton" or the "Debtor"), by and through its undersigned counsel, files this motion (the "Motion") for an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving a compromise and settlement reached by and among Weirton, the Pension Benefit Guaranty Corporation ("PBGC"), and the chapter 7 trustee (the "Trustee") to the bankruptcy estates of FW Holdings, Inc. ("FW") and Weirton Venture Holdings Corporation ("WVHC"). In support of this Motion, the Debtor respectfully represents as follows:

1. By this Motion, the Debtor requests approval of a compromise and settlement reached by and among Weirton, the PBGC and the Trustee to the bankruptcy estates of FW and WVHC, which resolves certain claim disputes relating to alleged obligations of the Debtor, FW and WVHC that arose from or relate to the Weirton Pension Plan.

### JURISDICTION

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

1

## BACKGROUND

3. On May 19, 2003 ("Petition Date"), Weirton filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code" or the "Code") in the United States Bankruptcy Court for the Northern District of West Virginia (the "Bankruptcy Court" or "Court") at Case No. 5:03-BK-1802.

4. On February 26, 2004, FW and WVHC, entities affiliated with Weirton, each commenced chapter 11 cases in the Bankruptcy Court, which were subsequently converted to cases under chapter 7 of the Bankruptcy Code. Thomas Fluharty was appointed as Trustee to the chapter 7 bankruptcy estates of FW and WVHC.

5. On February 26, 2004, the Debtor filed a Motion (the "Sale Motion") for An Order Pursuant to Sections 105, 363, 365 and 1146 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014: (I) Scheduling Hearing to Approve Amended and Restated Asset Purchase Agreement dated February 25, 2004 with ISG Weirton Inc. and International Steel Group Inc. Subject to Higher or Better Offers; (II) Approving Bidding Procedures for Submission and Acceptance of Any Competing Bids and Related Bid Protections (Including Break-up Fee and Expense Reimbursement); (III) Approving the Form and Manner of Sale Notice; (IV) Approving and Authorizing (A) the Sale of Substantially All Assets, Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (B) the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases.

6. Pursuant to the Sale Motion, the Debtor conducted an auction (the "Auction") on April 12 and 13, 2004. On April 15, 2004, the Debtor determined that the bid submitted at the Auction by ISG Weirton Inc. (the "Buyer"), a wholly owned affiliate of International Steel Group Inc., was the highest and best bid for the substantially all of the Debtor's assets.

7. On April 22, 2004, this Court entered an Order (the "Sale Order"), which, *inter alia*, approved the sale (the "ISG Sale") of substantially all of the Debtor's assets to the Buyer.

8. The ISG Sale closed effective May 17, 2004 (the "Closing"), after which time Weirton no longer conducted business operations. Since the Closing, the Buyer has been operating Weirton's assets as a going concern.

9. On July 9, 2004, the Debtor filed its First Amended Plan of Liquidation under Chapter 11 of the Bankruptcy Code (the "Plan") and an accompanying disclosure statement (the "Disclosure Statement"). Generally, the Plan provides for the distribution of all estate assets, including but not limited to the proceeds from the ISG Sale, to all creditors of the estate holding allowed claims, and, the dissolution of the Debtor upon the effective date of the Plan.

10. The Court approved the Disclosure Statement on July 12, 2004, and scheduled a hearing to consider confirmation of the Plan for August 24, 2004.

11. On August 23, 2004, the Debtor filed its Second Amended Plan of Liquidation under Chapter 11 of the Bankruptcy Code, which included limited modifications to the Plan, and, on August 24, 2004, the Bankruptcy Court confirmed the Debtor's Second Amended Plan of Liquidation under Chapter 11 of the Bankruptcy Code (the "Confirmed Plan").

A. **The Claims of the PBGC**

12. The PBGC administers the federal pension insurance program set forth in Title IV of the Employee Retirement Income Security Act of 1974, as amended from time to time ("ERISA"), 29 U.S.C. §§ 1301-1461.

13. Weirton was the administrator of the Weirton Pension Plan (within the meaning of 29 U.S.C. §§ 1002(16) and 1301(a)(1)), and the Weirton Pension Plan is an employee pension benefit plan to which 29 U.S.C. § 1321(a) applies, and is subject to Title IV of ERISA.

14. On October 21, 2003, the PBGC filed a complaint in the United States District Court for the Northern District of West Virginia at Civil Action No. 5:03-CV241 seeking, *inter alia*, an order (1) appointing the PBGC as the statutory trustee of the Weirton Pension Plan, (2) terminating the Weirton Pension Plan, and (3) establishing October 21, 2003 as the Termination

Date of the Weirton Pension Plan. Weirton and the PBGC executed a trusteeship agreement on November 12, 2003 pursuant to which Weirton consented to the PBGC becoming trustee of the Weirton Pension Plan, and on November 21, 2003, the PBGC dismissed the District Court action.

15. On or about August 25, 2003, the PBGC recorded liens (the "PBGC Liens") of record in the amount of $45,897,048 against each of FW and WVHC asserting control group liability of FW and WVHC with respect to the Weirton Pension Plan. The PBGC also filed unsecured priority claims against FW and WVHC (the "PBGC-FW/WVHC Claims").

16. The PBGC has filed the following claims of record in the Weirton case:

(i) amended claim no. 1930 (amending claim no. 0027) in the amount of $825,100,000 asserting administrative priority and unsecured priority statues for unfunded benefits liabilities;

(ii) amended claim no. 1931 (amending claim no. 0028) in the amount of $101,524,551 asserting administrative priority and unsecured priority statues for unpaid contributions;

(iii) claim no. 0026 in an unliquidated amount for unpaid pension insurance premiums; and

(iv) claim no. 20452 in the amount of $79,509,328 asserting administrative priority status for minimum funding contributions.

(the "PBGC-Weirton Claims," together with the PBGC Liens and the PBGC-FW/WVHC Claims are referred to hereinafter as the "PBGC Claims".)

17. Weirton and the Trustee (on behalf of FW and WVHC) dispute the amount, extent, priority and validity of the PBGC Claims.

## RELIEF REQUESTED

18. By this Motion, the Debtor requests approval of a compromise and settlement agreed to by Weirton, the Trustee and the PBGC, which resolves the disputes relating to the PBGC Claims. Weirton, the Trustee and the PBGC (collectively, Weirton, the Trustee and the PBGC are referred to as the "Parties") desire to resolve the PBGC Claims disputes in order to avoid the costs, risks, delay and uncertainty associated with the prosecution and defense of the

PBGC Claims. The compromise and settlement will expedite the consummation of the Confirmed Plan and best serve the interests of Weirton, FW, WVHC, their respective estates and creditors, and the PBGC.

A.  **Significant Terms of the Compromise and Settlement**

19.  A true and correct copy of the settlement agreement entered into by Weirton, the Trustee and the PBGC (the "Settlement Agreement") is attached hereto as <u>Exhibit "A"</u> and incorporated herein by reference. However, the primary terms of the Settlement Agreement follow:

  (i)  <u>Administrative Priority Claim</u>. The PBGC's administrative claim no. 20452 is fixed and allowed against Weirton in the amount of $4.0 million and shall be paid in accordance with section 2.1 of Weirton's Confirmed Plan.

  (ii)  <u>Release of Claims</u>. Other than as specifically provided in the Settlement Agreement, the PBGC forever releases and discharges each of Weirton, FW and WVHC from any and all claims, past, present or future, relating to the Weirton Pension Plan and/or the trusteeship thereof or otherwise.

  (iii)  The agreements and releases set forth in the Settlement Agreement shall not be effective unless and until the Bankruptcy Court enters the order approving the Settlement Agreement, substantially in the form attached hereto as <u>Exhibit "B"</u>.

20.  Weirton submits that the compromise and settlement is fair and reasonable and in the best interest of the estate and its creditors as the compromise and settlement permits Weirton to expeditiously resolve the PBGC Claims disputes, which otherwise could substantially delay the consummation of the Confirmed Plan, increase costs associated with litigating the PBGC Claims, and result in a substantial dilution of the distributions to creditors holding allowed claims, if the PBGC Claims were allowed. Likewise, the compromise and settlement best

5

serves the estates of FW and WVHC as it discharges the PBGC Claims against those estates and preserves the costs that the estates would otherwise incur in challenging the PBGC Claims.

## AUTHORITY FOR SETTLEMENT

21. Bankruptcy Rule 9019 provides that the Court "may approve a compromise or settlement." Compromises are tools for expediting the administration of the case and reducing administrative costs and are favored in bankruptcy. See In re Bond, 1994 U.S. App. Lexis 1282, *9-*13 (4th Cir. 1994) ("To minimize litigation and expedite the administration of a bankruptcy estate, 'compromises are favored in bankruptcy.'"); Fogel v. Zell, 221 F.3d 955, 960 (7th Cir. 2000); Fishell v. Soltow (In re Fishell), No. 94-1109, 1995 WL 66622, at *2 (6th Cir. Feb. 16, 1995); In re Martin, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Colliers on Bankruptcy ¶ 9019.03[1] (15th Ed. 1993)). Various courts have endorsed the use of Bankruptcy Rule 9019. See, e.g., Bartel v. Bar Harbour Airways, Inc., 196 B.R. 268 (S.D.N.Y. 1996); In re Foundation for New Era Philanthropy, Case No. 95-13729B, 1996 Bankr. LEXIS 1892 (Bankr. E.D. Pa. Aug. 21, 1996); In re Miller, 148 B.R. 510, 516 (Bankr. N.D. Ill. 1992); In re Check Reporting Service, Inc., 137 B.R. 653 (Bankr. W.D. Mich. 1992); In re Patel, 43 B.R. 500, 504 (N.D. Ill. 1982).

22. The standards by which a Court should evaluate a settlement are well established. In addition to considering the proposed terms of the settlement, the Court should consider the following factors:

    a) the probability of success in litigation;

    b) the difficulty in collecting any judgment that may be obtained;

    c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attendant to it; and

    d) the interest of creditors and stockholders and a proper deference to their reasonable views of the settlement.

See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-245 (1968); United States ex rel. Rahman v. Oncology Assocs., P.C., 269 B.R. 139,

152 (D. Md. 2001); In re Frye, 216 B.R. 166, 174 (E.D. Va. 1997) (Alexandria Division); In re Patel, 43 B.R. at 504-05; Fishell, 1995 WL 66622, at *3; In re Pennsylvania Truck Lines, Inc., 150 B.R. 595, 598 (E.D. Pa. 1992), aff'd, 8 F.3d 812 (3d Cir. 1993); In re Grant Broadcasting, Inc., 71 B.R. 390, 395 (Bankr. E.D. Pa. 1987); In re Neshaminy Office Bldg. Assoc's., 62 B.R. 798, 803 (E.D. Pa. 1986).

23. The decision to approve a settlement or compromise is within the discretion of the Court and is warranted where the settlement is found to be reasonable and fair in light of the particular circumstances of the case. See TMT Trailer Ferry, 390 U.S. at 424-25. The settlement need not be the best that the debtor could have achieved, but need only fall "within the reasonable range of litigation possibilities." In re Telesphere Communications, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994). In making its determination, a court should not substitute its own judgment for that of the debtor. Neshaminy Office, 62 B.R. at 803.

24. The Settlement Agreement is fair and reasonable under the circumstances and in the best interest of Weirton's creditors. Weirton's decision to settle and compromise the matters subject to the Settlement Agreement is an exercise of its reasonable business judgment to maintain and preserve the assets to be distributed under the Confirmed Plan. In addition, the Settlement Agreement best serves the estates of FW and WVHC as it discharges the PBGC Claims against those estates and preserves the costs that the estates would otherwise incur in challenging the PBGC Claims.

## NOTICE

25. Notice of this Motion has been provided to the official service list approved in this case and counsel for the PBGC. The Debtor submits that, under the circumstances, no other or further notice is required.

WHEREFORE, Weirton respectfully requests that this Court (i) approve the Settlement Agreement; (ii) authorize Weirton to execute, deliver, and implement any and all documents,

Case 5:03-bk-01802    Doc 2845    Filed 09/07/04    Entered 09/07/04 15:47:29    Desc
Main Document    Page 7 of 8

fully perform any and all obligations, and take any and all actions, reasonably necessary or appropriate to effectuate the compromise and settlement without further Order of Court; and (iii) grant such other relief as this Court deems just and proper.

Dated: September 7, 2004

                      **McGUIREWOODS LLP**

By:     */s/ Mark E. Freedlander*
      Mark E. Freedlander (Pa. ID No. 70593)
      James H. Joseph (Pa. ID No. 82087)
      Michael J. Roeschenthaler (Pa. ID No. 87647)
      Dominion Tower, 23rd Floor
      625 Liberty Avenue
      Pittsburgh, PA 15222
      Telephone:   (412) 667-6000
      Facsimile:    (412) 667-6050

-and-

BAILEY, RILEY, BUCH & HARMAN, L.C.
Arch W. Riley, Jr. (WV I.D. No. 3107)
Riley Building
53 - 14th ST Suite 900
Wheeling, WV 26003-0081
Telephone: 304.232.6675
Facsimile: 304.262.9897
Email: arileyjr@brbhlaw.com

Co-Counsel to Weirton Steel Corporation